[Filed April 28, 1883.]
## D. L. GEE v. M. L. CULVER.

MALICIOUS PROSECUTION — DEFENSE. — It is no defense to an action for malicious prosecution that the defendant laid the facts within his knowledge before a justice of the peace, and acted on his advice in making the arrests complained of.

ID. — MALICE TO BE PROVEN. — An instruction that "if the defendant acted rashly, wantonly, or wickedly, the presumption of malice is conclusive," is erroneous in making the question of malice an inference of law instead of a fact to be proved.

PROBABLE CAUSE — LAW AND FACT. — The question of probable cause is a mixed question of law and fact.

ID. — PLEADING — JUSTIFICATION — (Per THAYER, J., concurring). — Under a simple denial, a defendant can only give in evidence matter which directly controverts the allegations of the complaint. He cannot justify without alleging in his answer the facts constituting such justification.

PLEADING — DENIAL — AFFIRMATIVE MATTER. — The denial of an allegation need not be absolute nor in any particular form. Affirmative matter qualifying a denial, when it does not amount to a justification, need not be separately stated, but may be joined to the denial as an *absque hoc.*

MULTNOMAH COUNTY. Defendant appeals. Reversed and new trial ordered.

The respondent alleged in his complaint in substance that the appellant, on the 29th day of December, 1883, wrongfully and maliciously went before a justice of the peace of said county, and without probable cause charged him with the crime of embezzlement, and of converting $113, and procured a warrant for his arrest upon said charge, and wrongfully, unlawfully, and maliciously, and without any probable cause, went to the residence of the respondent and arrested him, and compelled him to go with him to East Portland, and there and then confined him

in the city jail for four hours, when respondent was taken before the said justice of the peace for examination upon said charge, and was thereupon discharged, and the action was dismissed and ended. The appellant filed an answer to the complaint, in which he denied the alleged wrongful, unlawful, and malicious going before the said justice of the peace, and of so making the said charge, or that he otherwise charged respondent with said crime, except as thereinafter alleged, or that he so procured a warrant for the arrest of the respondent upon such charge, or so arrested or imprisoned him, or otherwise arrested or imprisoned him for any time. And for a further and separate answer and defense alleged that he was a constable of said county of Multnomah, duly appointed and qualified to act as such; that on said 29th day of December, 1883, having information and being in possession of facts which he believed constituted the commission of a crime by the respondent, he made a true statement of all said facts, and all the facts in relation thereto within his knowledge and possession, to the said justice of the peace, and that said justice, being satisfied that a crime had been committed, and that there was probable cause to believe the respondent guilty thereof, caused an information to be made and subscribed by the appellant, charging the respondent with said crime; that thereupon said justice duly issued to appellant a warrant for the arrest of the respondent, and to bring him before said justice at his office; and that under and by virtue of said warrant, and in the discharge of his official duty as such constable, he arrested the respondent and took him before said justice in obedience to said writ, and not otherwise. The respondent filed a demurrer to that part of the appellant's answer which is termed a further and separate answer, upon the grounds that it did not constitute a defense or mitigation. The court sustained the demurrer, and the remaining issues were tried before a jury, who returned a verdict in favor of the respondent for the sum of $100, upon which the judgment appealed from was entered. Evidence was given upon the trial, as appears from the bill of exceptions, that the appellant made the complaint before the justice of the peace charging the respondent with having

embezzled $113 of money belonging to J. M. Scott, and applied to the justice for a warrant for his arrest, which the justice issued to the appellant as such constable. At the time the warrant was issued, the appellant stated that he wanted an order indorsed on the warrant authorizing him to make the arrest on Sunday, stating that the respondent might escape. The respondent, against the objection of the appellant, also gave in evidence the part of the transcript of the proceedings had before the said justice of the peace, showing the amount of fees earned by apellant as constable in such case, which was $3.30. The respondent gave evidence tending to show that he and two brothers of his resided on a farm owned by them in said county, worth $5,000; that on Friday, the day before he was arrested by the appellant, he came to East Portland with some stock he had sold. After delivering the cattle he went around town for awhile and then went home. Upon the next day he came back to town, did some marketing, and went home again; that he received the money for the cattle ($113) on the Friday he delivered them; that J. M. Scott had given him permission to sell the cattle; that Scott had a chattel mortgage on them; that he started home on Friday about 2 or 3 o'clock at night, got home about 4 o'clock in the morning, and Sunday morning, about 2 or 3 o'clock, the appellant and Mr. Linville, the marshal of East Portland, came and arrested him upon said charge and took him back to town. Upon cross-examination of the respondent, as a witness, he admitted that he had been convicted of larceny as bailee in a Justice's Court, which he attempted to explain as having been wrong. It also appeared that Mr. Scott had a mortgage upon the cattle sold by the respondent, but that he had given him permission to sell them, and either to pay him the money or replace other cattle, and that Scott did not direct the arrest, or know anything about it, until after the respondent was arrested. It appeared, also, that Mr. Scott and appellant resided in the same precinct in East Portland. Testimony was also given tending to show that the respondent's reputation for honesty and integrity was bad; that after he received said money for the cattle it was reported that

he had been robbed, also that he had gambled the money off, and there would seem to have been a general suspicion that he had made way with the money; that reports from several citizens were made to the appellant of the fact that the respondent had received the money; that it belonged to Mr. Scott, and that he had probably gambled it off. This, in connection with the bad reputation of the respondent, led to the prosecution. The court gave the following instructions, which are alleged as error: —

*First* — If the defendant acted rashly, wantonly, or wickedly, the presumption of malice is conclusive, and defendant is responsible. The facts ought to satisfy any reasonable mind that the accuser had no ground for the proceedings but his desire to injure the accused.

*Second* — If the defendant might, with reasonable diligence, have ascertained the facts before he began the action he should have done so. The defendant to rebut malice, when the plaintiff has made a *prima facie* case, must show that he did all that a reasonable man would have done to ascertain the truth of the charge before bringing the action.

*Third* — No man has a right to cause the arrest of another on mere suspicion. He must be in possession of facts which induce him to believe in the truth of the rumor. If he could have ascertained the facts by reasonable diligence, he is liable just as much as though he had ascertained the facts and still instituted the prosecution.

*Fourth* — If you cannot reconcile the action of defendant in the matter in any other way than by presuming him grossly ignorant, such ignorance will not protect him. Every man is presumed to know the law.

*Fifth* — On the question of malice you may also take into consideration the fact that defendant would earn some fees as an officer in serving the warrant and making the arrest complained of.

*A. H. Tanner*, for Appellant.

It is the duty of a peace officer to make complaint where he has reasonable cause to believe that a crime has been committed.

(*Glaze* v. *Whitley,* 5 Oreg. 164.) An action will not lie against one who in good faith makes complaint to a proper officer or tribunal upon which another is indicted or prosecuted, even though the act complained of did not constitute a crime. (*Dennis* v. *Ryan,* 65 N. Y. 385; 4 Wait Actions and Defenses, 339, and cases cited.) The first instruction above set up is radically wrong. In order to sustain an action for malicious prosecution there must be proof both of malice and want of probable cause. (*Harpham* v. *Whitney,* 77 Ill. 32; *King* v. *Colvin,* 11 R. I. 582; *Wicker* v. *Hotchkiss,* 62 Ill. 107; *Deitz* v. *Langfitt,* 63 Pa. St. 234.) The malice here referred to is express malice, as contradistinguished from malice in law. In other words, malice in this action is not derived from legal presumptions, it is always a question of fact. (*Sherman* v. *Dutch,* 16 Ill. 283; *Harkrader* v. *Moore,* 44 Cal. 144; *Oliver* v. *Pate,* 43 Ind. 132; *Newell* v. *Downs,* 8 Blackf. 523; *Griffin* v. *Chubb,* 7 Tex. 603; *Stewart* v. *Sonneborn,* 98 U. S. 187; *Turner* v. *Walker,* 3 Gill & J. 377; S. C. 22 Am. Dec. 329; *Trowman* v. *Smith,* 12 Am. Dec. 263, n.; *Glaze* v. *Whitley, supra.*) If there is a belief of guilt on the part of the prosecutor, based upon reasonable grounds, he is justified in making the complaint. (*Bacon* v. *Towne,* 4 Cush. 238; *Carl* v. *Ayers,* 53 N. Y. 17; *Farnam* v. *Feeley,* 56 N. Y. 451; *Graeter* v. *Williams,* 55 Ind. 461; *Shaul* v. *Brown,* 28 Iowa, 37.)

*O. P. Mason,* for Respondent.

It was not necessary to prove express malice. The instruction taken in connection with what was afterwards said upon the subject, was equivalent to saying to the jury that if they found there was no probable cause for the arrest they might infer malice from defendant's acts if they were rash, wanton, and wicked. (1 Hill. Torts, 420, § 10.) To establish probable cause the defendant must show, not that plaintiff was in fact guilty, but that the circumstances within defendant's knowledge were such as would lead an ordinarily cautious man to believe him guilty. (*Galloway* v. *Stewart,* 49 Ind. 156; *Harkrader* v. *Moore,* 44 Cal. 144; *Lamb* v. *Galland,* 44 Cal. 609.) The fact

that the defendant sought the advice of a justice of the peace before acting is no defense. (*White* v. *Carr*, 71 Me. 555.)

WALDO, C. J.— This case comes up on the ruling sustaining the demurrer to the defendant's separate defense and misdirection of the jury at the trial. The demurrer was rightly sustained. It was no defense to the action that the defendant laid the facts within his knowledge before a justice of the peace, and acted on his advice in making the arrests. (*Olmstead* v. *Partridge*, 16 Gray, 381; *Brobst* v. *Ruff*, 100 Pa. St. 91; S. C. 45 Am. Rep. 358.) The instructions objected to were drawn by the plaintiff's counsel. That part of the first instruction, "if the defendant acted rashly, wantonly, or wickedly, the presumption of malice is conclusive," is objectionable. The statement is, indeed, supported by a *dictum* in *Travis* v. *Smith*, 1 Pa. St. 234. But in malicious prosecution the court cannot go further than to give a definition of malice; it is never an inference of law. In that action malice must be alleged and proved as an independent fact. (Denman, C. J., in *Mitchell* v. *Jenkins*, 5 Barn. & Adol. 593.) The jury are the exclusive judges of the malice of the defendant. (Washington, J., in *Munns* v. *Dupont*, 3 Wash. C. C. 37; *Stewart* v. *Sonneborn*, 98 U. S. 193.) "Whether malice existed or not is a matter of fact for the jury to decide, taking into consideration all the circumstances of the case. The question of probable cause is a mixed proposition of law and fact. Whether the circumstances alleged to show it probable or not probable are true and existed is a matter of fact; but whether supposing them true, they amount to a probable cause is a question of law to be decided by the court." (Duvall, J., in *Murray* v. *McLane*, 1 Brun. Col. Cas. 405; S. C. 5 Hall L. J. 515.) Taunton, J., in *Mitchell* v. *Jenkins*, above, refers to the distinction touching malice between ordinary actions of tort and actions of malicious prosecution. (And see Holmes Com. Law, 142.)

The jury, then, must find that the defendant was in fact actuated by a wrong motive. The instruction, on the contrary, makes malice a conclusion of law, placing it in this respect on the same footing with probable cause. The judge must say to

the jury, "I tell you, if you think so and so, there is a want of reasonable and probable cause." (Coleridge, J., in *Haddrick* v. *Heslop*, 12 Q. B. 275.) That is, the jury must pass on the credibility of the testimony, not on its effect. But when the judge comes to malice, he must tell the jury malice is so and so, and leave it to them to draw their conclusions from the evidence. The jury are told substantially, by the third instruction, to find the defendant guilty should they find there was a want of probable cause, omitting the element of malice. In this there was a double error, as indicated above. "It is an action not to be favored, and ought not to be maintained without rank and express malice and iniquity." (Holt, C. J., in *Savill* v. *Roberts*, 12 Mod. 211.)

Lord, J., concurred.

Thayer, J., concurring.—From the evidence shown by the bill of exceptions I cannot see anything to justify the conclusion that the conduct of the appellant in the matter indicated malice. He was a peace officer, and these facts and rumors coming to him that the respondent had received this money, that it belonged to Mr. Scott, that the respondent was around gambling, and the questionable reputation he evidently bore in the community, were well calculated to excite suspicion. The appellant was doubtless hasty and imprudent in not having conferred with Scott upon the subject before instituting the proceedings; but that circumstance is a long way from establishing malice. There may have been no probable cause, in fact, for the arrest of the respondent, but it does not necessarily follow that the proceeding was instituted through malice. The plain, straightforward, and candid statement of the appellant in his testimony, as set out in the bill of exceptions, refutes the charge that he was actuated by any such motive, and if the case had been fairly submitted to the jury they would not have been likely to have arrived at any such conclusion; but they were told by the judge who presided at the trial that if the appellant acted rashly, wantonly, or wickedly, the presumption of malice was conclusive, and that he was responsible. The judge was doubtless authorized to charge

as to the effect of rash or hasty conduct upon the part of the appellant, as the evidence showed that he did not consult Mr. Scott as to the affair; but he certainly had no right to instruct the jury as to any wanton or wicked acts of the appellant, unless there is other and quite different testimony from that set out in the bill of exceptions.

A court has no right to instruct a jury as to any fact unless there is evidence in the case that would justify their finding that such fact was true; but in no case had the court a right to tell the jury that rash acts would afford a conclusive presumption of malice. It is true. that the court, in another paragraph in the same instruction, advised the jury that the facts ought to satisfy any reasonable mind that the accused had no ground for the proceeding but his desire to injure the accused; but when that is taken in connection with the former part of the instruction, the jury would naturally have concluded that if the appellant acted rashly, wantonly, or wickedly, the facts would not only justify any reasonable mind in concluding that the accused had no ground for the proceeding except his desire to injure the accused, but that it would be conclusive upon that point. I think that instruction was clearly erroneous.

The next instruction complained of is to the effect that if the appellant could, with reasonable diligence, have ascertained the facts before he began the action he should have done so. The defendant, to rebut malice, when the plaintiff has made a *prima facie* case, must show that he did all that a reasonable man would have done to ascertain the truth of the charge before bringing the action. For what purpose this instruction was given would be very difficult to determine. The gist of the action on trial was whether the prosecution against the respondent was malicious, and without probable cause, and any fact which would not tend to prove that issue would be irrelevant. Whether the court intended to have the jury understand that if the appellant did not use reasonable diligence to ascertain the facts before he began the action they could infer malice, was left to speculation. That part of the instruction could not have been relevant for any other purpose, and it is very doubtful in my

mind whether the inference indicated could have been drawn from the fact of a failure to exercise such diligence. Persons who act hastily and imprudently in such cases do not necessarily act from malicious motives.

The other proposition contained in the charge, that in order to rebut malice, when a *prima facie* case had been made, the party should have done all that a reasonable man would have done to ascertain the truth of the charge before bringing the action, was entirely too theoretical. What could the jury have understood by a *prima facie* case of malice, or what a reasonable man would have done under the circumstances? If the appellant had reasonable cause to believe that a crime had been committed, it was his duty to make the complaint. A deliberate and timid officer in such a case would be worthless; an offender would get out of the country before he would make up his mind what to do. Prompt and decisive action is highly necessary in such matters, and an officer should not be judged to have acted maliciously because he was expeditious. The instruction given to the jury, that "no man has the right to cause the arrest of another on mere suspicion; he must be in possession of facts which induce him to believe in the truth of the rumor. If he could have ascertained the facts by reasonable diligence, he is liable just as much as though he had ascertained the facts and still instituted the prosecution," was improper, and prejudicial to the appellant. It left the jury to infer that if the appellant made the complaint to the justice of the peace upon suspicion of the respondent's guilt, or without being in possession of facts which induced him to believe in the truth of the rumor he had heard, or if he could have ascertained the facts by reasonable diligence, he was liable. Admitting the existence of all the circumstances which would appear to have been assumed in the instruction, still the appellant was not necessarily liable, as he may, notwithstanding, have acted in good faith. Actual malice in such a case must be proved the same as fraud at law, not necessarily by direct evidence, but by such cogent facts as must necessarily establish it. The court had no right to infer malice upon any state of facts. That question was for the jury.

Another instruction given to the jury was improper. They were told by the court that if they could not reconcile the action of the appellant in the matter in any other way than by presuming him grossly ignorant, such ignorance would not protect him; that every man was presumed to know the law. It seems to me that the jury could only have understood from that instruction that the appellant's action in the matter had been most extraordinary and irregular, such as a grossly ignorant person might display, and that they had no right to reconcile it by a presumption of ignorance. It was an assumption upon the part of the court of the existence of a fact, when it should have been left to the jury to find whether or not such fact did exist.

The remaining instruction excepted to by the appellant's counsel was to the effect that upon the question of malice the jury might also take into consideration the fact that the appellant would earn some fees as an officer in serving the warrant and making the arrest complained of. This earning of fees doubtless referred to the fee of $3.30 charged by the appellant. It is a very remote circumstance, and could not have been much of an inducement for the appellant to have instituted the prosecution; but it was fairly left to the jury, and could not have prejudiced the appellant. The court doubtless had the right to submit it to the jury for what it was worth.

The appellant has also assigned as error the ruling of the court upon the demurrer to the separate defense. The rule formerly was that in trespass to the person, or to personal or real property, the defendant, under the general issue of not guilty, could give in evidence matters which directly controverted the fact of his having committed the acts complained of. But where the act would *prima facie* appear to be trespass, and the facts stated in the declaration could not be denied, any matter of justification or excuse had to be specially pleaded. (1 Chitty Plead. 500.) Hence, where the defendant did the act at the request of the plaintiff, or the injury was occasioned by the latter's own default, it had to be so pleaded; and a special plea amounting to the general issue was good when it contained special matters

of justification. If it went in avoidance of a material part of
the declaration it was allowed, though as to some part of the
declaration it only amounted to a denial. (Gould Plead. ch. 6,
§ 80.) The same principle exists under our Civil Code. The
Code only attempted to change the form of the pleading in such
cases. Instead of a special plea in bar, as formerly, the defend-
ant avers new matter constituting a defense. This he may do
in all cases of special matter of justification, although his answer
in great part amounts only to a denial.

In a case like the one under consideration the defendant, under
a simple denial, could only give in evidence matter which
directly controverted the allegations of the complaint. He
could not justify without alleging as a defense that he was an
officer authorized to serve process; that such process had been
duly issued to him; and that by virtue thereof he had arrested
the plaintiff, and taken him before the magistrate, and impris-
oned him, in order to hold him in custody, setting out the
several acts with sufficient particularity, and averring that it
was the same alleged arrest, etc. The separate answer in this
case might have been sufficient if it had been definite and cer-
tain, and had shown that the appellant was in possession of facts
authorizing the belief that the respondent had been guilty of a
crime, and that he thereupon filed the information before the
magistrate. He should have set out the facts as to what his
information was which he alleged he believed constituted a
crime, though if they had not been sufficient to have constituted
a probable cause it would not follow that he was liable. There
may have been no probable cause, and yet the act not have been
malicious. Malice may be inferred from a want of probable
cause, but it is not a necessary inference. The jury must be
satisfied, from all the facts and circumstances of the case, that
the party in such a proceeding has been actuated by bad motives
—has sought to make use of the forms of law in order to gratify
a malignant desire—before they are authorized to find malice.
Hence, a party may be unable as a matter of law to justify the
course he has pursued, and yet have a complete defense to such
an action, and by skillful pleading present substantially to the

court the facts before alluded to under a form of denial; not, however, as some pleaders do, by denying the allegations of the complaint, except as thereinafter admitted, and then set out an alleged separate defense, but by following a form of denial analogous to that used in courts of chancery, and from which the system of denial under the Code was borrowed. The denial does not have to be absolute, nor in any particular form. It must be in accordance with the truth of the facts; a denial with an *absque hoc*, as it was termed, expresses the idea intended to be conveyed.

In connection with the subject, it may be proper to suggest that the practice which prevails to a great extent of sustaining demurrers and motions to pleadings at *nisi prius* is in many instances very inconsiderate. The merits of a cause of action or defense are too often disregarded through a mere caprice. Courts ought to be extremely cautious in such matters. The object of a lawsuit is to settle differences between parties in accordance with justice, and that object should never be lost sight of in any case. A faulty pleading had better be endured, than a substantial right sacrificed. Our Code system was adopted in order to get rid of the hardships and technicalities of the system which preceded it, and to secure a more liberal method of administering justice.

The judgment appealed from should be reversed, and a new trial granted.