(113 App. Div. 35)

PEOPLE ex rel. SAMPSON v. DUNNING, Justice of the Peace, et al.

(Supreme Court, Appellate Division, Second Department.   May 4, 1906.)

**1. CRIMINAL LAW—PRELIMINARY PROCEEDINGS—INQUISITION BEFORE MAGISTRATE—INFORMATION.**

Code Civ. Proc. § 451, provides that, where the name of a necessary party cannot be ascertained, the moving party may designate such party by a fictitious name, or by as much of his name as is known, adding a description identifying the person intended, and Code Cr. Proc. § 152, while not calling for a description under such circumstances, provides that the warrant must "specify" the name of the defendant, or, if it be unknown to the magistrate, the defendant may be "designated" therein by any name. *Held* that, where an information on which an inquisition before a magistrate was based related to the crime of conspiracy, and clearly disclosed that the deponent knew who the parties were who made the alleged threats and requests complained of, it was insufficient to refer to them by the fictitious names of John Doe and Richard Roe, without any other designation or description.

**2. SAME—DESIGNATION OF CRIME.**

Code Cr. Proc. § 148, provides that an information is the foundation of the jurisdiction of a magistrate in preliminary proceedings, and an information is defined by section 145 as being "the allegation made to a magistrate that a person has been guilty of some designated crime." Section 148 declares that, when an information is laid before a magistrate of the commission of a crime, he must examine the informant or prosecutor, and any witnesses he may produce, on oath, and take their depositions. *Held*, that an information charging that John Doe and Richard Roe willfully, etc., conspiring to interfere with and injure the property and business of a certain railroad company and construction company, did solicit and urge deponent not to work for D. or for the contracting company or the railroad company, stating that they would injure deponent's credit as a contractor if he proceeded with such work, and that they would pay deponent to quit said work, was fatally defective for failure to designate the commission of any crime, and was therefore insufficient to confer jurisdiction on the magistrate.

**3. PROHIBITION—JUSTICES OF THE PEACE—JURISDICTION—PERSONS ENTITLED TO RELIEF.**

Where an information filed with a justice of the peace was insufficient to confer jurisdiction on the justice to conduct an inquisition, a person subpœnaed to appear before the justice and answer questions was entitled to a writ of prohibition to restrain further proceedings.

Appeal from Special Term.

Application for a writ of prohibition by the people, on relation or Samuel J. Sampson, against E. C. Dunning, Jr., a justice of the peace, and the people of the state of New York, the alleged plaintiff, in a criminal action pending before such justice.   From an order denying the application, relator appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Herbert R. Limburger, for appellant.

Francis T. Osborne, Otto T. Hess, and Henry R. Barrett, for respondents.

WOODWARD, J.   The relator, Samuel J. Sampson, has been subpœnaed as a witness in what is popularly known as a "John Doe proceeding" before a justice of the peace for the county of Westchester,

and he has been denied an absolute writ of prohibition restraining the said justice of the peace from continuing the investigation, and compelling the relator to appear and answer questions. He appeals from the order denying such writ. It is well settled that a writ of prohibition lies only where there is a want of jurisdiction, or where a court or judge or other tribunal is proceeding in excess of the jurisdiction conferred. People ex rel. Hummel v. Davy, 105 App. Div. 598, 602, 94 N. Y. Supp. 1037, and authority there cited. We apprehend, however, that jurisdiction, in a measure, at least, depends upon that element of good faith which should be at the foundation of all judicial proceedings, and in applying technical rules it may not be out of place to call attention to the abuses which are likely to arise if the courts are lax in insisting that all proceedings of a criminal nature shall be carried on within the letter and the spirit of the law. That the ends of justice may not be defeated, the law wisely provides, both in civil and criminal cases, that where the name of a necessary party cannot be ascertained—where it is in good faith unknown—the moving party may designate the defendant in the summons, and in any other process or proceeding in the action, by a fictitious name, or by as much of his name as is known, adding a description indentifying the person intended. See section 451, Code Civ. Proc.; section 152, Code Civ. Proc. While in the latter Code there does not appear to be any provision calling for a description in those words, it is provided that in the warrant it must "specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated therein by any name," and to designate is to "point out by distinguishing from others"; to "indicate by description, or by something known and determinate" (14 Cyc. 229); so that it would appear that the policy of the law is not satisfied merely by declaring that John Doe or Richard Roe, or both of them (these names being generally recognized as being fictitious), have been guilty of a crime. Good faith and the spirit of the law alike demand that the parties who are accused of crime, or who are necessary defendants in a civil proceeding, should be pointed out in the papers, if not by their own proper names, then by such descriptions as will enable the parties and the court or magistrate or other officials who may have to do with them to know who is intended; and this is peculiarly true when the facts and circumstances are such that the accusing party in a criminal proceeding must, of necessity, know the party or parties. It could never have been the intention of the Legislature that any individual might, by merely alleging that a fictitious person had committed a crime, begin a general investigation into the affairs of the community. All of our criminal law proceeds upon the theory that every man is presumed innocent until the contrary is shown, and it is all administered, or intended to be administered, with a view to protecting the innocent against the designs of irresponsible and vicious persons. The grand jury is the great bulwark of the innocent; it is designed to prevent criminal proceedings in cases where there is lack of probable cause, and this is to be determined in secret by responsible men chosen from the community at large, acting upon their oath and upon sworn testimony, and it is hardly to be supposed that the Legislature has intended to open the doors to irre-

sponsible inquisitors, who merely allege generally that fictitious persons have been guilty of crime.

In the matter now before us the information on which the justice of the peace has assumed to act relates to the crime of conspiracy, if to any crime at all, and it is alleged that:

"That the said John Doe and Richard Roe, willfully, maliciously, wrongfully, and fraudulently conspiring to interfere with and injure the property and business of the said New York, Westchester & Boston Railroad Company and the property and business of the said City & County Contracting Company, did thereupon solicit and urge deponent not to work for the said James P. McDonald, or for the said City & County Contracting Company, or for the said New York, Westchester & Boston Railroad Company, stating that they would injure deponent's credit as a contractor if he proceeded with such work, and that they would pay deponent to quit said work."

Clearly, the deponent knew who the parties were who made these alleged threats and requests. They appear from the language used to have been made directly to the deponent, and yet there is not the slightest effort to give the real names of the parties, or to designate them in any manner, except as John Doe and Richard Roe; these names being conceded to be fictitious. The deponent does not, apparently, dare to allege that any known individual has done any of the acts which he sets forth, although if the statements are true they were made to him directly, and he might at least have designated them by some kind of a description. It appears from the papers that he knew the relator, Mr. Sampson, and that it was the latter, who was one of the parties, who had the conversation with the deponent, and that Mr. Sampson was requested to make an affidavit in support of the deponent's allegations, under a threat that he would be called as a witness in a John Doe proceeding, and yet the deponent, knowing all of these facts, and being in a position to know the parties, contents himself with a general allegation against John Doe and Richard Roe, thus dodging the responsibility which it is the policy of the law to demand on the part of those who would make use of its criminal processes. We do not intend to hold that there might not be a case in which a mere allegation that John Doe had committed a particular crime would not be sufficient to give jurisdiction, but where it appears from the moving papers that the deponent must have known the true names, or at least must have been in a position to have described or indicated the particular individuals, it seems clear to us that it is a perversion of the law to attempt to carry on an investigation under such an information; that it is lacking in that good faith and that sense of individual responsibility which should be manifest in such a proceeding.

We come now to consider the information, and to determine whether the justice of the peace acquired jurisdiction. The information is the foundation for the jurisdiction of the magistrate (McKelvey v. Marsh, 63 App. Div. 396, 398, 71 N. Y. Supp. 541; Code Cr. Proc. § 148), and an information is defined by section 145 of the Code of Criminal Procedure as being "the allegation made to a magistrate, that a person has been guilty of some designated crime." This would seem to require, where the real defendant was known, a designation of the person sufficiently clear, so that there would be no justification for attempting

to make him a witness against himself, and at the same time a designation of the crime which it was alleged such person had committed, not by an argumentative blanket allegation of facts and conclusions, but by a plain and concise statement that some known crime—such as murder, arson, burglary, grand larceny, conspiracy, or assault—had been committed. This is evident, not alone from the language of the section quoted, but from that of succeeding sections.

Section 148 provides that:

"When an information is laid before a magistrate, of the commission of a crime, he must examine on oath the informant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them."

Section 149 provides that:

"The depositions must set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the crime and the guilt of the defendant."

It is "the crime" designated in the information that is to be supported by the depositions of the prosecutor and his witnesses, and not the general allegations of fact from which an inference of a crime might or might not be drawn, according as the pleader has been accurate or inaccurate in his statement of facts. Words having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended (Perkins v. Smith, 116 N. Y. 441, 448, 449, 23 N. E. 21, and authority there cited) ; and when the Code of Criminal Procedure undertook to define an information, and to require that it should allege "that a person had been guilty of some designated crime," it used the word designated in its well-settled legal sense, which is "to call by a distinctive title ; to point out by distinguishing from others ; to express or declare ; to indicate by description, or something known and determinate ; to point out or mark by some particular token ; to show ; to point out ; to specify." 14 Cyc. 229, and authorities cited in notes ; 9 Am. & Eng. Ency. of Law, 405, and authorities cited in notes, particularly note 2. Tried by this test, it is very plain that the information before the justice, upon which it is sought to compel the relator to testify, does not charge that any person has been "guilty of some designated crime," and this is a jurisdictional defect, which may not be overlooked.

Speaking of the far-reaching possibilities of dispensing with this requirement, a learned jurist in People ex rel. Fleming v. Mayer, 41 Misc. Rep. 289, 84 N. Y. Supp. 71, says:

"A mere form of words, charging nothing, and subjecting no person to responsibility for the utterance, could be made the basis of a general inquiry by or before a magistrate, into any and every question arising between members of the community which might be deemed to have a bearing upon some half-suspected crime, and all persons would be bound to attend, if directed, and to testify to any matter which the person conducting the inquiry might deem of moment. The policy of our law is to confine the general power of inquiry to the grand jury, a body periodically chosen from the whole body of citizens of the community itself, whose exercise of that power, with due regard to the rights of the citizens, is safeguarded by the number of its members."

See, also, People v. Hiley, 33 Misc. Rep. 168, 68 N. Y. Supp. 361; People ex rel. Sandman v. Tuthill, 79 App. Div. 24, 79 N. Y. Supp. 905. In that case this court declared that:

"The statute contemplates that the information shall set forth that a definite crime has been committed, not with all of the particularity of an indictment, but with sufficient definiteness, so that the magistrate may know that some particular offense against the law is charged."

The information failing to designate any crime, there is a jurisdictional defect, and it ought not to be necessary for the relator to be compelled to submit to the examination, or to be compelled to refuse to answer questions before he can be relieved. The justice of the peace can have no jurisdiction except upon the filing of an information which charges some person with "some designated crime," and, in the absence of such an information, it is clearly within the province of this court to issue its mandate directing the proceeding to be terminated.

The order appealed from should be reversed, and the absolute writ of prohibition should issue.

Order reversed, with $10 costs and disbursements, and motion for writ of prohibition granted. All concur.