Argued March 24; reversed May 9; rehearing denied July 6, 1939

# WHITE *v.* PACIFIC TELEPHONE & TELE-
# GRAPH CO. ET AL.

(90 P. (2d) 193)

In Banc.

*Howard T. McCulloch*, of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for appellants.

*Wm. J. Crawford* and *Barge E. Leonard*, both of Portland (Eugene C. Libby, of Portland, on the brief), for respondent.

RAND, C. J.  This is an action for malicious prosecution of a criminal action in which the plaintiff was charged with the crime of assault and robbery, being armed with a dangerous weapon.

The complaint, in substance, alleged that the Pacific Telephone and Telegraph Company and R. V. Jenkins, one of its employees, commenced and prosecuted the action complained of; that plaintiff was arrested in said action, bound over to the grand jury and confined in jail until discharged upon a not true bill returned by the grand jury, and that the prosecution was malicious and without probable cause.

The trial resulted in a verdict and judgment in favor of the plaintiff and against both defendants. From this judgment, defendants have appealed.

In order to maintain an action for malicious prosecution of a criminal action, it is necessary for the plaintiff to allege and prove that the action complained of was commenced and prosecuted by the defendants without reasonable and probable cause and that it was malicious. The defendants contend that neither of said elements were proved in the instant case and, for that reason, it was error for the trial court to refuse to grant defendants' motion for a directed verdict.

The plaintiff bases his right to recover in this action upon certain allegations contained in the complaint which, in substance, are as follows: That on January 12, 1937, the defendant Jenkins, while acting within the scope of his employment, signed and verified an information before Judge Cohn, municipal judge of the city of Portland and ex officio a justice of the peace, charging that on January 9, 1937, the crime of assault and robbery, being armed with a dangerous weapon, was committed by John Doe and Richard Roe, whose true names were unknown, and caused a warrant to be issued thereunder for the arrest of said unknown parties, intending thereby that the plaintiff, although not named in the information, should be arrested as one of said parties and be prosecuted for said crime, and that, pursuant thereto, the plaintiff was arrested and thereby sustained the damage alleged in the complaint.

The evidence shows, and it is undisputed, that at 9:40 on Saturday morning, January 9, 1937, three days before this information was filed, two masked men armed with revolvers entered the office of G. G. Lundberg, the local cashier of the defendant company, located on the sixth floor of the building occupied by the defendant company in the city of Portland and, by force and violence, robbed him and his assistant of the sum of

$5,484.50 in moneys belonging to the defendant company and made their escape from the building by means of an inside fire-escape leading to a door opening on the street, which they unlocked. While perpetrating the robbery, the men forced Lundberg and his assistant into a steel vault and turned the combination, locking them inside the vault. Another employee of the defendant company, who entered the room while the crime was being committed, was bound and tied with a wire which one of the robbers took from his pocket. They then made their escape with the money, by passing through another office leading to a fire-escape, without being seen by any other employee of the defendant company, and have never been apprehended for the crime, and their identity was unknown when the information was signed and verified by Jenkins.

As a part of his case in chief, the plaintiff called Clarence A. Potts, a deputy district attorney, and he testified as follows:

"Q. Mr. Potts, I will ask you to state what official position you occupy in the County of Multnomah, State of Oregon? A. Deputy district attorney. Q. How long have you been deputy district attorney? A. Oh, it will be four years January 17th, next year. Q. I will ask you if you were acting as deputy district attorney for the County of Multnomah, State of Oregon, on or about the 12th day of January, 1937? A. I was. Q. And where were you assigned for duty at that time? A. Down at the police station. Q. Mr. Potts, I hand you Plaintiff's Exhibit 2, and calling your attention to that portion known as an information, I will ask you to state whether or not you drew the original of the certified copy which I have handed to you? A. I did. Q. Did you draw it on the date it bears? A. I did. Q. And upon whose information did you draw this? A. On the information of the

police department and Mr. Jenkins. Q. Ray V. Jenkins? A. That is correct. Q. And he related the facts to you upon which you based this information? A. That is correct. Q. I will ask you to state whether or not Mr. Jenkins at the time on January 12, 1937, when you drew this information, if he made a disclosure to you mentioning the name of Coe C. White in connection with this information? A. Coe C. White was never mentioned at the time this was drawn or prior to the time this was drawn. I didn't hear the name Coe C. White until some time after this information had been filed.''

From this testimony of Mr. Potts, which is wholly undisputed, it will be seen that plaintiff's own evidence shows that this information was drawn by the deputy district attorney after a disclosure to him by the police department and Jenkins of all the facts and circumstances surrounding the commission of the crime which were then known and at that time the name of the plaintiff was never mentioned or considered as being a participant in the commission of the crime. Hence, plaintiff's contention that it was the intention of Jenkins, when signing and verifying this information, to accuse the plaintiff or to later cause him to be arrested and prosecuted for the crime is contradicted by plaintiff's own testimony. Moreover, the undisputed evidence shows that before this information was signed and verified, the robbery was being investigated by the police officers of the city of Portland and at the time it was signed and verified it was done at the request of the police officers and not upon the initiative of Jenkins, or under the directions of the defendant company. Furthermore, the undisputed evidence shows that the subsequent arrest and prosecution of the plaintiff was made and had by the police department

of the city of Portland and not by Jenkins or the defendant company.

From the evidence to which we have referred, it follows that the criminal action was not commenced or prosecuted by the defendants, as alleged in plaintiff's complaint, but was commenced by the filing of an information prepared by a deputy district attorney and the issuance of a warrant by the committing magistrate who had jurisdiction of the crime charged in the information and that the proceedings subsequently taken in the action were conducted and controlled either by the police department of the city of Portland or by the State of Oregon, acting through its district attorney.

It is also shown by the evidence and undisputed that, after the arrest of the plaintiff, he was brought before Judge Cohn as the committing magistrate and that, after the hearing of the evidence introduced by the state, the plaintiff was bound over to appear before the grand jury. It is also undisputed that at said hearing, the plaintiff was present and represented by two attorneys, and that no evidence whatever was introduced or offered upon the hearing in his behalf.

That there was probable cause for the arrest and prosecution of the plaintiff was proved by the following facts: About 5 o'clock in the evening of the day on which the robbery was committed, one Frank Weisz, who had been previously convicted of a crime and paroled from the bench, voluntarily appeared at the police station and disclosed to the officers that some six or seven months prior thereto he had been solicited by the plaintiff, Coe C. White, who had been employed by the defendant company for many years prior thereto as an equipment engineer, to join him and one

Morris Albohaire, an ex-convict from the Washington State penitentiary, in committing a robbery of the defendant company similar to the one which was actually committed on January 9, 1937, and he told the officers that he had been furnished, by White, with a blue-print of the sixth floor of the defendant company's building and with a key to the door leading to the street from the foot of the fire-escape, and that the plans of the proposed robbery, as outlined by the plaintiff to him, were identical to the manner followed by the two men who later perpetrated the robbery above referred to. After making said disclosures, Weisz, accompanied by one of the police officers, went to his room and produced the blue-print and delivered the same to the officer. This was introduced and offered in evidence as defendants' exhibit No. 14. Later, Weisz, accompanied by the officers, went to the defendant company's building and pointed out to them the manner in which the plaintiff had proposed to him that the robbery should be committed. This conformed to the manner in which the robbery was actually perpetrated. Weisz also stated to the officers that a key to unlock the door leading from the fire-escape to the street had been given to Albohaire, whose whereabouts at that time Weisz did not know. Upon communicating with the penitentiary officials in Walla Walla, the Portland police found that Albohaire was in Seattle and, at their request, he was taken into custody by the Seattle police, and, upon being notified of that fact, several of the police officers and Jenkins went to Seattle and interviewed Albohaire, who made a full disclosure to them of the proposal made to him by White and this corroborated Weisz' statement in all particulars. At the same time Albohaire delivered the key which he

said he had received from White and, upon an investigation made by the police officers, the key unlocked the door leading from the fire-escape to the street. Upon receiving this information, Lieutenant Schulpius, one of the Portland police officers, telephoned to Sergeant Fleming of the Portland Detective Bureau, directing him to cause the arrest of White, and, under his directions, a warrant was then issued and delivered to another police officer for the purpose of making the arrest. At the time of this delivery, the warrant did not contain the name of Coe C. White, but the officer who made the arrest, upon his own initiative and without being directed to do so, typewrote on the face of the warrant the words: "John Doe whose true name is Coe C. White", and then made the arrest. There was no change, however, made in the information which had been signed and verified by Jenkins and there is an entire absence of evidence showing or tending to show that the plaintiff was arrested at the request of the defendants or either of them, or that the later prosecution of the plaintiff was had at their request.

Section 13-2007, Oregon Code 1930, provides:

"The warrant must specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated by a fictitious name, with a statement therein that his true name is unknown, and it must also state a crime in respect to which the magistrate has authority to issue the warrant."

■■ That this statute is valid, see Annotation 51 L. R. A., 219, and 4 Am. Jur., p. 10. But, whether valid or not, no warrant for the arrest of White was necessary under section 13-2111, Oregon Code 1930, since a felony had actually been committed and the arresting officer ·

had reasonable grounds for believing that White had committed it.

■ ■ Under the statute, the issuance of a John Doe warrant upon an information charging the commission of a crime by unknown parties was not void *ab initio* and no liability can be predicated against Jenkins and his employer upon the ground that the warrant upon which the plaintiff was arrested was unauthorized or illegal. It is clear from the evidence that there was reasonable grounds for the arrest of plaintiff and for his subsequent prosecution by the state upon the charge of assault and robbery, being armed with a dangerous weapon, and there was no evidence to support the allegation that plaintiff was prosecuted either maliciously or without probable cause. It is a generally accepted rule and one which prevails in this state that:

"* * * where the result of the preliminary examination before a magistrate is unfavorable to accused and he is held or committed by the magistrate, this is prima facie but not conclusive evidence of probable cause. This prima facie case may be overcome by evidence that the action of the magistrate was obtained by false testimony or other improper means; but unless it is overthrown by testimony of that character, it becomes conclusive and must prevent plaintiff from prevailing." 38 C. J., 411.

Holding to that effect, see *Putnam v. Stalker,* 50 Or. 210, 91 P. 363, and *Stamper v. Raymond,* 38 Or. 16, 62 P. 20.

■ Since it is undisputed that a preliminary examination was held and the plaintiff was bound over to appear before the grand jury by the committing magistrate and there being no evidence that the action taken by the committing magistrate was obtained by false

testimony, fraud or other improper means, upon this ground alone, the plaintiff cannot prevail in this action.

■It was also shown upon the trial that, after Jenkins had been requested by the police to sign and verify the information, and before doing so, he made a full disclosure of the facts within his knowledge and information to Mr. Omar Spencer, one of the attorneys for the defendant company, and asked his advice as to whether he should sign the information and Jenkins was advised by Mr. Spencer to do so. This is testified to by both Jenkins and Spencer and is uncontradicted and is conclusive upon the question of whether there was probable cause for the initiation of criminal proceedings against the unknown parties charged in the information.

■ Under this evidence, the law applicable is stated in the Restatement of the Law of Torts, as adopted and promulgated by the American Law Institute, as follows:

"(1) The advice of an attorney at law admitted to practice and practicing in the state in which the proceedings are brought, whom the client has no reason to believe to be interested, is conclusive of the existence of probable cause for initiating criminal proceedings in reliance upon the advice if it is

(a) sought in good faith, and

(b) given after a full disclosure of the facts within the accuser's knowledge and information."

§ 666, p. 416.

■ Reasonable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person charged is guilty. Newell on Malicious Prosecution, § 1, p. 252.

■ Thus, even if it had been proved in this case that the criminal action complained of had been commenced and prosecuted by the defendants, still the action could not be maintained if the facts were such as to reasonably lead the defendants to believe or to honestly and strongly suspect that the plaintiff was guilty. While it is true that the information disclosed by Weisz and Albohaire came from the lips of persons who had been previously convicted of a crime, yet these disclosures were such as would lead a person of ordinary caution and prudence to believe that the plaintiff was guilty. After checking up on these statements and comparing those made by the one with those made by the other, they were sufficient to lead the police and prosecuting officers, as well as the defendants, to honestly believe that the plaintiff was guilty. In the face of these facts, it is clear that there was reasonable ground for believing the plaintiff to be guilty. Whether the plaintiff was, in fact, guilty or not is wholly immaterial so far as this action is concerned.

■ For another reason, this action cannot be maintained regardless of who commenced or prosecuted the criminal action. The robbery was actually committed and a large sum of money was taken belonging to the defendant company. It was the duty of the defendant company and of its officers and employees to use all legal means to apprehend and convict the guilty persons and, in doing so, if they acted with good faith, the law will protect them against an action for damages although the accusation may in fact be unfounded. This rule is founded on grounds of public policy to encourage exposure of crime and the punishment of criminals. See *Gee v. Culver*, 12 Or. 228, 6 P. 775; *Hess v. Oregon German Baking Company*, 31 Or. 503, 49 P. 803; *Nally v.*

*Richmond*, 105 Or. 462, 209 P. 871. See also, 18 R. C. L. p. 11.

From what has been said, it follows that this action cannot be maintained and that the court erred in failing to direct a verdict in favor of the defendants. The cause, therefore, will be remanded to the court below with directions to dismiss the action, and it is so ordered.

BELT, J., not sitting.

KELLY, ROSSMAN, BEAN, and LUSK, JJ., concur.

BAILEY, J., dissents in part.

---

KELLY, J. In this case I think that it is unnecessary to pass upon the constitutionality of the statute authorizing the issuance of warrants of arrest under fictitious names. Reserving that question until, if at all, its solution is imperative, I concur in the opinion of Mr. Chief Justice RAND.

---

BAILEY, J. (dissenting in part). On January 12, 1937, R. V. Jenkins, one of the defendants in this action, swore to an information before the municipal judge of the city of Portland, and *ex officio* justice of the peace, accusing "John Doe and Richard Roe, whose true names are unknown", of the crime of assault and robbery, being armed with a dangerous weapon. Acting upon this information, the municipal judge on January 12, 1937, signed a "warrant of arrest" for "John Doe and Richard Roe, whose true names are unknown". No other description of the accused individuals was given, either in the information or the warrant of arrest. On the following day, January 13,

the police of the city of Portland, pursuant to such warrant, arrested this plaintiff. After taking him into custody, the officer who made the arrest, upon his return to the police station and on his own initiative, inserted in the warrant in typewriting the following: "John Doe, whose true name is Coe C. White". No authority for the arrest other than the warrant is shown or claimed to have existed.

Section 9, article I, of the constitution of Oregon is as follows:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, *and particularly describing* the place to be searched *and the person* or thing *to be seized.*" (Italics supplied.)

The purpose of inserting the above provision in the constitution of this state is best explained by the Honorable Matthew P. Deady, who was the president of the constitutional convention which drafted the constitution of Oregon and prepared and reported to the legislative assembly the code of criminal procedure of 1864, certain parts of which code will hereinafter be discussed. We quote, in this connection, from Judge Deady's opinion in *Sprigg. v. Stump,* 8 Fed. 207 at 213, the following:

"This provision [§ 9, *supra*] is copied from the fourth amendment to the constitution of the United States, and was placed there on account of a well-known controversy concerning the legality of general warrants in England, shortly before the revolution, not so much to introduce new principles as to guard private rights already recognized by the common law. 2 Story, Const. 1902; Conk. Treat. 615. These warrants were

issued from the secretary's office for the arrest of persons concerned in printing and publishing of obscene or seditious libels, without naming any one. At length, in Mooney v. Leach, 3 Bur. 1742, (Anno. 1765,) they were declared void for uncertainty, the case being as to the legality of such a warrant issued by the Earl of Halifax, without information on oath, commanding the arrest of 'the printers and publishers' of a 'seditious libel entitled the North Briton, No. 45,' without naming any one. And on April 22, 1766, the house of commons voted that such warrants were illegal. 4 Black. Com. 292, note *k*.

"The law, as thus declared, was put beyond controversy, as to the government of the Union, by this fourth amendment, and from there transferred to the constitution of the states. At the same time, there being some doubt whether the common law absolutely required that a warrant should issue only upon information on oath, the clause concerning probable cause on oath was added. Hale's P. C. 582; 4 Black. 290; Mooney v. Leach, *supra*; DeGrey, *arguendo*, 1764."

The code of criminal procedure, which has not been amended since its adoption in 1864 with respect to the provisions hereinafter referred to, provides the procedure which must be followed in order to procure a warrant for arrest. It requires the information on which the warrant is based to be verified "by the oath of the party making it", § 13-2001, Oregon Code 1930, and defines the magistrate who has authority to issue a warrant, §§ 13-2002 and 13-2003, ibid.

Section 13-2007, Oregon Code 1930, reads as follows:

"The warrant must specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated by a fictitious name, with a statement therein that his true name is unknown, and must also state a crime in respect to which the magistrate has authority to issue the warrant."

It is asserted that under this last quoted section of the criminal code a warrant is sufficient which merely designates the defendant as John Doe or Richard Roe, without any other words to identify or describe the accused. This contention is without merit, in that it overlooks the express provision of § 9 of article I of the constitution, hereinbefore quoted. The names John Doe and Richard Roe are generally recognized as being fictitious and not describing any particular persons. One individual as well as another could be arrested on such appellation in a warrant. The use of those or similar fictitious names does not comply with the mandate of the constitutional provision hereinabove quoted, which requires that the person to be arrested must be particularly described.

The constitutions of all the states except New York, New Jersey, Alabama, Arizona and Washington provide that the warrant must contain a description of the person to be arrested: American Law Institute, Code of Criminal Procedure 186. The appellate division of the supreme court of New York, although that is one of the five states above mentioned, in referring to the designation of an accused by a fictitious name without any other description, in *People ex rel. Sampson v. Dunning*, 113 App. Div. 35, 98 N. Y. S. 1067, made the following observation:

"That the ends of justice may not be defeated the law wisely provides, both in civil and criminal cases, that where the name of a necessary party can not be ascertained—where it is, in good faith, unknown—the moving party may designate the defendant, in the summons, and in any other process or proceeding in the action, by a fictitious name, or by as much of his name as is known, *adding a description, identifying the person intended.* [Italics supplied.] (See Code Civ.

Proc. § 451; Code Crim. Proc. § 152.) While in the latter code there does not appear to be any provision calling for a description in those words, it is provided that in the warrant it must 'specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated therein by any name,' and to designate is to 'point out by distinguishing from others;' to 'indicate by description or by something known and determinate' (14 Cyc. 229), so that it would appear that the policy of the law is not satisfied merely by declaring that John Doe or Richard Roe, or both of them, these names being generally recognized as being fictitious, have been guilty of a crime. Good faith and the spirit of the law alike demand that the parties who are accused of crime, or who are necessary defendants in a civil proceeding, should be pointed out in the papers, if not by their own proper names, then by such descriptions as will enable the parties and the court or magistrate or other officials who may have to do with them, to know who is intended, and this is peculiarly true when the facts and circumstances are such that the accusing party in a criminal proceeding must, of necessity, know the party or parties. It could never have been the intention of the legislature that any individual might, by merely alleging that a fictitious person had committed a crime, begin a general investigation in the affairs of the community; all of our criminal law proceeds upon the theory that every man is presumed innocent until the contrary is shown, and it is all administered, or intended to be administered, with a view to protecting the innocent against the designs of irresponsible and vicious persons.''

The majority opinion herein, after quoting § 13-2007, *supra*, states that the statute is valid, citing in support thereof the annotations in 51 L. R. A. 219 and 4 Am. Jur. 10. The opinion then proceeds to state that, ''the issuance of a John Doe warrant upon an information charging the commission of a crime by unknown

parties was not void *ab initio*, and no liability can be predicated against Jenkins and his employer upon the ground that the warrant upon which the plaintiff was arrested was unauthorized or illegal." It would appear from the language used that this court approves the warrant which was issued by the magistrate, and sanctions the arrest of one suspected of having committed a crime, by the use of a John Doe warrant containing no description of the accused. The reference to 4 Am. Jur. 10 is undoubtedly made with respect to § 8 of that work, under the heading "Arrest", which section reads as follows:

"It is essential to the validity of the warrant that the person to be arrested should be identified by the terms of the warrant. This is usually done by the insertion of his name on the warrant, although it is not indispensable that the name of the person to be arrested should appear in the warrant. If, however, the warrant does not set forth the name by reason of its being unknown, or for other adequate cause, the rule is well established that the warrant must contain the best description possible, sufficient to indicate clearly the person to be arrested, and should state his occupation, personal appearance, place of residence, or other means of identifying him. If it does not contain the name of the defendant or any description or designation by which he could be known and identified as the person sought, it is void. Thus, a warrant granted with the name in blank and without sufficient designation of the person to be arrested is void, not only at common law, but as being in violation of the constitutional provisions declaring that every citizen has a right to be secure from unreasonable search and seizure and that no warrant shall issue for the arrest of a person without a special designation of the persons or objects of search, arrest, or seizure. A warrant to arrest 'John Doe,' without any further description or means of identification of the person to be arrested is a nullity.

However, where an arrest is made under a John Doe warrant, and later, a regular warrant is issued under which the prisoner is held, the courts have refused to release the person arrested in spite of the invalidity of the original arrest. * * * It appears, however, that a statute may properly be passed authorizing the practice of issuing John Doe warrants. * * * ''

In support of the statement in the above quoted excerpt that it appears that a statute may properly be passed authorizing the issuance of John Doe warrants, the only citation of authority is that of the annotation in 51 L. R. A. 219. Turning now to that annotation, we find reference to a New York case which holds to the contrary, and which is followed by the statement that since the decision therein a statute had been passed in New York authorizing the issuance of warrants under fictitious names if the right name of the accused is unknown; and to the case of *Tidball v. Williams*, 2 Ariz. 50, 8 P. 351. Arizona, a territory at the time of that decision, is now one of the five states which do not have constitutional provisions to the effect that the warrant must contain a description of the person to be arrested.

The Arizona case appears to have been cited only once on the point here involved, and then in *West v. Cabell*, 153 U. S. 78, 14 S. Ct. 752, 38 L. Ed. 643. In that instance the plaintiff, Vandy M. West, was arrested under a warrant issued by the United States commissioner commanding the arrest of James West, and not otherwise designating or describing the person to be arrested. At the trial it appeared that the plaintiff had never been known or called by the name of James West or by any other name than his own. Over the objection of the plaintiff the court admitted oral testimony by the

defendants and others that the warrant was issued and intended for the arrest of the plaintiff, and instructed the jury thus: ". . . and if you believe from all the evidence that the plaintiff is the man for whose arrest the commissioner issued the warrant, you will find that the defendants are not liable for damages on account of the mere fact of the arrest."

In passing upon the objection to the oral testimony and the exception to the foregoing instruction, the opinion states:

"By the common law, a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him. If it does not, the officer making the arrest is liable to an action for false imprisonment; and if, in attempting to make the arrest, the officer is killed, this is only manslaughter in the person whose liberty is invaded": citing numerous authorities.

"The principle of the common law, by which warrants of arrest, in cases criminal or civil, must specifically name or describe the person to be arrested, has been affirmed in the American constitutions; and by the great weight of authority in this country a warrant that does not do so will not justify the officer making the arrest": citing authorities.

After discussing numerous cases, the opinion therein proceeds as follows:

"The only cases cited by the defendants in error, which have any tendency to support the rulings at the trial, were in Delaware, in which the chief justice dissented, and in Iowa and Arizona, whose statutes provided that 'the warrant must specify the name of the defendant, and, if it be unknown to the magistrate, may designate him by any name;' and in none of those cases was any notice taken of opposing precedents or constitutional injunction."

Then are cited cases from Delaware and Iowa, and the Arizona case of *Tidball v. Williams,* supra, followed by this conclusion:

"In the case at bar, the effect of the rulings and instructions of the court was to give the jury to understand that the private intention of the magistrate was a sufficient substitute for the constitutional requirement of a particular description in the warrant", and therefore, "The judgment is reversed."

Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction will be adopted by the courts. In *State v. Flynn,* 137 Or. 8, 299 P. 694, 300 P. 1024, this court quoted with approval from Cooley's Constitutional Limitations as follows:

"As a conflict between the statute and the constitution is not to be implied, it would seem to follow, where the meaning of the constitution is clear, that the court, if possible, must give the statute such a construction as will enable it to have effect. This is only saying, in another form of words, that the court must construe the statute in accordance with the legislative intent."

Section 13-2007, *supra,* can be so construed as to render it not in conflict with § 9 of article I of the constitution, only by treating the statute as supplemental to the constitutional provision and permitting the use of a fictitious name, if the accused is otherwise particularly described in the information and the warrant of arrest.

Before swearing to the information for a warrant of arrest, the defendant Jenkins, according to his testimony, was told of plaintiff's having conspired with

two ex-convicts some seven months prior to the robbery here involved, to commit a robbery similar in details to the one that was perpetrated. He also, he said, before signing that information, verified the statement of one of those ex-convicts and found many of the particulars related by him to be correct. Convinced by that statement and his own investigation, Jenkins was of the opinion that the plaintiff was one of the participants in the robbery. Nevertheless, in making the complaint to the deputy district attorney, Jenkins did not even mention White's name. Had he been acting in good faith, believing that there was probable cause for the arrest of White, it is incomprehensible why he did not mention White's name, or why that name was not inserted in the information instead of the fictitious appellation, "John Doe". It cannot, therefore, be said that all the facts and circumstances surrounding the commission of the crime were disclosed to the deputy district attorney before that officer drew up the information for Jenkins to sign. Nor can it be said, in view of the record, that Jenkins and the defendant company had no part in procuring the deputy district attorney to prepare the information, or that the signing of it was not done "upon the initiative of Jenkins or under the direction of the defendant company."

Moreover, I do not agree that the court can say as a matter of law, from the record before it, that probable cause for the arrest and prosecution of White existed, based upon evidence other than the presumption which arises from the magistrate's action in binding White over to the grand jury. There was evidence introduced, to be sure, from which the jury might have

found that probable cause did exist; but that is not to say that as a matter of law there was probable cause.

The question of whether Jenkins and the officers of the telephone company disclosed all the facts within their knowledge concerning White's possible connection with the robbery, when seeking advice of counsel as to the signing of the information by Jenkins, was a matter that should have been determined by the jury, in view of the facts in the record.

For the reasons hereinabove set forth I dissent from the majority opinion in the particulars and to the extent indicated.

The result reached by the majority of the court is, I believe, correct, for the reason that the magistrate before whom the preliminary examination was had bound White over to await the action of the grand jury; and it has not been shown that this action of the magistrate was obtained ''by false testimony or other improper means''.

This action was instituted and tried as one for malicious prosecution, and not for false arrest or imprisonment. The allegations of the complaint before us are insufficient to support such latter cause of action. For that reason, I concur in reversing the judgment appealed from and remanding the cause to the circuit court with instruction to enter judgment for the defendants.