Decided 30 July, 1907.

## PUTNAM *v.* STALKER.

91 Pac. 363.

TRIAL—NONSUIT—INFERENCES FROM EVIDENCE.

1. On a motion for a nonsuit every reasonable inference from the evidence must be deduced in favor of the plaintiff, and those facts must be assumed to be true which the jury might fairly find under the testimony.

MALICIOUS PROSECUTION—DUTY TO INSTRUCT AS TO PROBABLE CAUSE.

2. In actions for malicious prosecution, where the facts are admitted or established, it is the duty of the trial judge to declare their legal effect, and not to leave that matter to the untrained judgment of a jury.

SAME—EFFECT OF PLAINTIFF HAVING BEEN HELD TO ANSWER BY COMMITTING MAGISTRATE.

3. The fact that the plaintiff in an action for malicious prosecution was examined before a committing magistrate, when witnesses were called for both sides, and was held to answer, establishes a *prima facie* case of probable cause for the arrest, subject to evidence that the action of the magistrate was induced by fraud or other improper influence.

SAME—SUFFICIENCY OF EVIDENCE.

4. The evidence in this case clearly shows that defendant acted in good faith in making the charge complained of, and relied on the advice of the district attorney, to whom he had previously fully and fairly communicated all the facts within his knowledge.

SAME—EFFECT OF ADVICE OF PROSECUTING ATTORNEY.

5. One who consults the district attorney before commencing a criminal prosecution and discloses to him all the facts which he knows or has reason to believe, and is advised to begin a prosecution, does not act without probable cause, even though by diligent search he might have discovered other and exculpatory facts, if he acted in good faith on the advice so received.

From Grant: GEORGE E. DAVIS, Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action for malicious prosecution by H. N. Putnam against J. L. Stalker. On March 27, 1906, defendant caused plaintiff to be arrested at Canyon City, Grant County, on a warrant issued by a justice of the peace, based on an information sworn to by defendant, charging plaintiff with having obtained from defendant on March 9, 1906, the sum of $37.50, under false pretenses. By reason thereof, plaintiff was confined in the county jail for 41 days. On May 21, 1906, at the regular term of the circuit court for that county, the prosecuting attorney returned into court an information indorsed "not a true bill," and thereupon plaintiff was discharged. In addition to the foregoing facts, plaintiff alleges that the prosecution was without probable cause and was actuated by malice, concluding with proper and usual allegations of damages. By his amended answer, defendant, by general denial, traverses the whole complaint, and, as a further defense, alleges the facts on which the charge was based; that, after making an investigation of all the circumstances, he submitted all the facts within his knowledge, through his attorney, to the deputy district attorney for that county, who advised defendant that there was probable cause for prosecuting plaintiff, and requested defendant to make and file the information on which the warrant was issued; that, acting in good faith, and relying upon the advice of the deputy district attorney, he made the information; that on April 25, 1906, a legal preliminary examination of the charge against plaintiff was had before the magistrate, at which evidence was introduced and witnesses were sworn and examined, both on behalf of the state, represented by the deputy district attorney, and on behalf of defendant in said cause, who appeared in person and by his attorney, and, after a full and fair hear-

ing of the cause, plaintiff herein was held by the magistrate to await the action of the grand jury at the next term of circuit court, and was admitted to bail in the sum of $250, and, being unable to give the same, he was committed to the custody of the sheriff of the county; that these acts of the defendant are the same acts stated in the complaint; and that the charges preferred were true. By the reply there was a general denial of the new matter of the answer. The cause was tried before a jury, and at the close of plaintiff's case defendant moved for a nonsuit, which was overruled by the court. He also requested of the court an instruction for a verdict in his behalf, based upon a claim that he had established by uncontroverted and competent evidence the defense that the prosecution was upon the advice and direction of the prosecuting attorney, which requested instruction was denied. The verdict was for plaintiff in the sum of $120, on which judgment was accordingly entered, and from which defendant appeals. Error is assigned upon the overruling of the motion for nonsuit and the refusal of the court to instruct the jury as requested by the defendant, as well as upon admission of testimony objected to by defendant.

Reversed.

For appellant there was a brief with an oral argument by *Mr. Errett Hicks.*

For respondent there was a brief over the names of *Victor G. Cozad* and *A. D. Leedy,* with an oral argument by *Mr. Cozad.*

Opinion by Mr. Commissioner Slater.

1. By his motion for nonsuit, defendant invoked the ruling of the court on the legal effect of the evidence of plaintiff to support his cause of action. Upon such motion every intendment and every fair and legitimate inference which can arise from the evidence must be made in favor of plaintiff, and the court must assume those facts as true which the jury can properly find under the evidence: *Wallace* v. *Suburban Railway Co.* 26 Or. 174 (37 Pac. 477: 25 L. R. A. 663). And if the evidence tends to show facts which will sustain the action, though

remote, the motion for nonsuit should not be sustained: *Herbert* v. *Dufur,* 23 Or. 464 (32 Pac. 302).

2. If the testimony offered by plaintiff tends to show that the defendant had good reason to believe that the law had been violated, and he acted in good faith, it is the duty of the court to declare the legal effect of the evidence by allowing the motion for nonsuit. "The welfare of society," says Mr. Justice BEAN, in *Hess* v. *Oregon Baking Co.* 31 Or. 503, 513 (49 Pac. 803), "imperatively demands that those who violate the law shall be promptly and speedily punished, and to accomplish that purpose the rule has been firmly established that any citizen who has good reason to believe that the law has been violated may cause the arrest of the supposed offender, and, if in doing so he acts in good faith, the law will protect him against an action for damages, although the accusation may in fact be unfounded. This rule is founded on grounds of public policy to encourage the exposure of crime, and the punishment of criminals, and when, therefore, the act of a citizen in thus enforcing the law is challenged, the court must determine the question, when the facts are admitted or established, whether he had probable cause for so doing, and not leave it to the arbitrament of a jury."

3. At the outset of his case, plaintiff offered, and there was received, the transcript of the proceedings in the justice court, which contains the information sworn to by defendant before the magistrate on March 27, 1906, and the warrant issued thereon, and upon which plaintiff was arrested on the 27th day of March, 1906, and on the next day was committed by the magistrate to the custody of the sheriff of the county. But it further shows that on April 25, 1906, a preliminary hearing was had before the magistrate upon the charge, and after an examination duly held according to law, at which the state appeared by the deputy prosecuting attorney for that county, and the plaintiff appeared in person and by his attorney, and after three witnesses had been examined on behalf of the state, and two on behalf of plaintiff, including himself, he was held to answer at

the next term of the circuit court for that county, and was admitted to bail in the sum of $250. This evidence, instead of showing the want of probable cause, the burden of showing which was upon plaintiff, makes, it would seem, a *prima facie* case of probable cause. "It is quite generally held," says Mr. Justice WOLVERTON, in *Stamper* v. *Raymond*, 38 Or. 16 (62 Pac. 20), "that, where proof was offered upon the examination which is deemed sufficient by the committing magistrate upon which to commit, his commitment accordingly will afford *prima facie* evidence of probable cause." The effect of the commitment as evidence of probable cause, however, may be overthrown by other evidence showing that it was obtained by false pretenses or other improper means: *Sharpe* v. *Johnston*, 76 Mo. 660; *Giusti* v. *Del Papa*, 19 R. L. 338 (33 Atl. 525) ; *Womack* v. *Circle*, 29 Grat. 192. But, unless it is overthrown by testimony of that character, it becomes conclusive, and must prevent the plaintiff from prevailing.

4. We are unable, however, to discover in the record any evidence on the part of plaintiff tending to show, and in fact it does not seem to have been claimed by him, that there was any fraud or other improper conduct on the part of this defendant at the preliminary examination which prevented the plaintiff from obtaining a full and fair hearing, or that the conclusion announced by the magistrate was the result of any improper conduct of defendant; nor are we able to find any evidence on part of defendant in this case, after his motion for nonsuit was overruled, by which the *prima facie* case of a probable cause, made out by the commitment, was overthrown. The court, therefore erred in denying the motion.

At the close of the testimony, defendant by his counsel requested the court to instruct the jury as follows:

"The court instructs the jury that the fact is before you and is not disputed that, before the defendant began the criminal action described in the complaint in this case, he was advised by J. E. Marks, Deputy District Attorney for the Ninth Judicial District of Oregon for Grant County, to institute the said

criminal action, and that before receiving such advice there had been laid before the said deputy district attorney all the facts and circumstances in the knowledge of the defendant relating to the charge against the plaintiff, and that the said deputy district attorney also made an investigation of his own motion of the charge against the plaintiff, and that after making such investigation, and after receiving all such facts and circumstances, advised the defendant to institute said criminal action, and that defendant acted on such advice in good faith; and I instruct you as a matter of law that such fact constitutes probable cause for said criminal action, and I instruct you to return a verdict for defendant."

This requested instruction was denied by the court, and, an exception to the ruling having been taken by the defendant, error is assigned thereon. It appears from the testimony that defendant, soon after having given plaintiff the order for the books, and after having paid plaintiff the sum of money charged to have been obtained under false pretenses, became suspicious of plaintiff's good faith and his right to receive the money as an agent for the proprietors of the work, and on that account defendant consulted with his attorney, A. M. F. Kircheiner, in regard to the matter, giving him a full, fair and correct statement of all that had transpired between the parties. It transpired that this attorney and R. R. McHaley, residents of that neighborhood, also had recently had transactions with plaintiff similar to those which had taken place between him and defendant, and on which the criminal information was based, and under the same circumstances. These three persons, after talking the whole matter over among themselves, becoming convinced that they had been swindled, and that they would never be supplied with the books, made an investigation to ascertain the correctness of the statements and representations made to each of them by plaintiff when taking their orders and receiving their money.

To that end communications were addressed to the Bureau of National Literature and Art in Washington, D. C., plaintiff's reputed principal, and to Mr. C. T. Brown, general manager of the Washington Post at Kansas City, Mo., which was, since

June, 1905, the successor in interest to all of the proprietary rights in the sale and distribution of the books in question, formerly possessed by said bureau. On March 19, 1906, the Bureau of National Literature and Art, through E. M. Hunt, its assistant treasurer, replied that Putnam had not been in its employ for a long time, and saying:

"We have been endeavoring to ascertain his whereabouts. * * If Mr. Putnam is still in your locality we would thank you to advise our Mr. C. T. Brown, 601 Century Building, Kansas City, Mo., at his expense by wire. Mr. Putnam's work has been very irregular, and we intend to put a stop to it. We should be pleased to receive this information if possible."

On March 21, 1906, Kircheiner received a telegraphic message from Brown to have Putnam arrested; but, fearing to act on such request without further information, Brown was advised by Kircheiner to forward a warrant. On March 25th following, the sheriff of the county received from Brown this telegram:

"Arrest H. N. Putnam claiming to be representative of Bureau of National Literature and Art. Charge, collecting and retaining trust fund."

Plaintiff was arrested and taken into custody by the sheriff, acting upon this order, but without warrant; but he immediately advised Brown that he would not hold plaintiff unless a proper warrant was forthwith furnished, and on March 27th he received from Brown this message:

"A. M. Kircheiner of Prairie City, Or., will make charge against Putnam. If not, collect all supplies belonging to Bureau of National Literature and Art and let go."

All these matters were fully disclosed to the deputy district attorney by Kircheiner acting for himself and for the defendant, and by R. R. McHaley. The deputy district attorney had talked with both of these persons, and they testified that they had fully and fairly disclosed to him all the facts within their knowledge regarding not only plaintiff's transactions with defendant, but also plaintiff's dealings with them concerning the sale of books, and the evidence shows that the defendant had previously dis-

closed to Kircheiner and McHaley all the material facts within
his knowledge upon which the criminal charge was afterwards
based, and that Kircheiner was acting as defendant's attorney
and was advising him as to what he should do in the matter.
The deputy district attorney also swears that he was made fully
acquainted with all the facts of the case by McHaley and Kirch-
einer, and that he had in fact been investigating appellant's
conduct for a month or six weeks previously, and was well
advised concerning his transactions, and based on such knowl-
edge and information he advised Kircheiner to have his client,
Stalker, the defendant, swear to the information, because he
then believed there was sufficient evidence to hold plaintiff.  He
preferred that Stalker should make the information, instead of
either Kircheiner or McHaley, because Putnam had admitted
to McHaley that he had not forwarded Stalker's order, which
fact made a stronger case against plaintiff, while they had no
evidence as to whether plaintiff had forwarded McHaley's or
Kircheiner's orders and money.  This testimony is corroborated
by both Kircheiner and McHaley.  The latter testifies that he
expressed his willingness to make the information himself; but,
the deputy district attorney advising that Stalker had the
stronger case, the latter was the proper person to make the
charge, and he was requested to swear to the information.  De-
fendant swears that he was so advised and requested by his
attorney, and that, relying upon the advice of the deputy dis-
trict attorney, conveyed to him through his attorney, and acting
in good faith, he appeared before the magistrate and swore to
the information.

5. There is nothing in the record that in any way controverts
any of these sworn statements, and it must result that it is
established that defendant in making the charge complained of
acted in good faith, relying upon the advice of the deputy dis-
trict attorney, who had previously been fully and fairly advised
of all the facts within the knowledge of the defendant.  "The
rule seems to be that where one seeking in good faith the advice
of a public prosecuting officer about the commencement of a

criminal prosecution discloses to such officer all the facts and circumstances within his knowledge, or which he has reasonable ground to believe, relating to the offense, and is advised by that officer to institute the prosecution, his defense of probable cause will be established if he acted in good faith upon such advice, even though there were other exculpatory facts which he might have ascertained by diligent inquiry": *Hess* v. *Oregon Baking Co.* 31 Or. 503, 513 (49 Pac. 803). An effort was made by plaintiff to challenge defendant's good faith in prosecuting the plaintiff by attempting to show that the prosecution was instituted by him, aided by Kircheiner and McHaley, with the object in view to force plaintiff to return to them the several amounts of money he had obtained from them. But it is sufficient to say, without reviewing the testimony in detail, that the attempt wholly failed. There was no testimony offered by plaintiff from which a jury could have drawn an inference of bad faith on the part of defendant in that connection. Each of his witnesses, offered for that purpose, testified that the defendant stated that, while he would like to have his money back, he was willing to forego that and to prosecute the plaintiff, because he believed him guilty. The court was in error when it refused the requested instruction.

It follows, therefore, that the judgment should be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.     REVERSED.