Argued July 8; reversed September 22; rehearing denied
November 3, 1931

# McINNIS v. ATLANTIC INVESTMENT
## CORPORATION ET AL.
(3 P. (2d) 118, 4 P. (2d) 314)

F. M. *Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for appellants.

*Johnston Wilson,* of Portland (Elton Watkins, of Portland, on the brief), for respondent.

BELT, J. This is an action to recover damages for a wrongful attachment alleged to have been sued out maliciously and without probable cause.

On June 20, 1928, the plaintiff and her husband, Malcolm McInnis, entered into a written contract with the defendants Beaver State Investment Co., R. L. Morton, and A. E. Shaw, wherein the latter were employed as real estate brokers to exchange for the Hoyt-Glisan apartments located in the city of Portland certain real property owned by the plaintiff and her husband near Spokane, Washington. It was agreed that, as compensation for such services, the real estate brokers were to receive $5,000 in monthly instalments to be adjusted satisfactorily. The exchange of the properties was made and the deal consummated on August 31, 1928. It is alleged that, on or about this date, the plaintiff and her husband reached an agreement with defendants Morton, Shaw and the Beaver State Investment Company "and in particular with defendant Shaw" whereby such brokers accepted, as compensation for the services ren-

dered, the sum of $50 in cash, a promissory note in the sum of $450, payable on demand, and another note in the sum of $4,500, payable to A. E. Shaw, trustee, in monthly instalments of $75. Plaintiff alleges that, notwithstanding this known settlement, the defendants, acting and conspiring together for the purpose of exacting payment in cash for the services rendered, or in lieu thereof, securing a mortgage on the Hoyt-Glisan apartments, commenced an action on September 8; 1928, in the name of the Atlantic Investment Corporation, to which the cause of action was assigned, to recover the compensation under the terms of the original contract. In such action a writ of attachment was issued and $71.49 deposited by plaintiff and her husband in the Citizens Bank of Portland was garnisheed, as was money in the hands of the manager of the apartment house, amounting approximately to $1,700. The money thus attached and garnisheed was, pursuant to an agreement of counsel, released, but soon thereafter a second writ of attachment was issued, which, it is alleged, was done for the purpose of annoying and harassing plaintiff. The action was finally terminated by plaintiffs therein who moved for a ·judgment of voluntary nonsuit. The order of dismissal signed on October 8, 1928, was not entered of record until January 8, 1929. While this action brought by the Atlantic Investment Corporation was pending a second action, seeking the same redress, was commenced by R. L. Morton, A. E. Shaw and the Beaver State Investment Company—to whom the claim had been assigned— against plaintiff and her husband, and further writs of attachment and garnishment were issued therein, all of which, plaintiff avers, was done in pursuance of a conspiracy as above stated. At this juncture it is well to note that the defendant A. H. York was president of

the Atlantic Investment Corporation and also of the Beaver State Investment Company; the defendant R. L. Morton was an employe of the latter company; and the defendant Shaw, who made no appearance in the action under consideration, was engaged in business as a real estate broker in the city of Spokane.

It is charged that, as a result of these alleged malicious attachments, the credit of plaintiff and her husband has been injured and that they have been obliged to pay out money for costs and attorneys' fees in such actions. Aside from the claim for special damages, plaintiff asked general damages in the sum of $2,500 and punitive damages for $15,000.

The answering defendants denied that they had entered into any conspiracy to injure plaintiff and her husband and allege that the actions to recover compensation for the services rendered as brokers were brought in good faith and upon the advice of counsel. They further aver that any settlement relative to compensation made between plaintiff and Shaw was unauthorized and entered into without their knowledge and consent for the purpose of cheating and defrauding them of their just compensation.

On the issues thus briefly stated the cause was submitted to a jury and a verdict returned in favor of plaintiff against defendants for compensatory damages in the sum of $1,600 and punitive damages in the sum of $3,500.

Defendants assert that the judgment can not stand for the reason, among others, that Malcolm McInnis, who died prior to the commencement of the action, is an indispensable party and should have appeared by personal representative.

■■ It is clear, after an examination of the undisputed facts in this case, that any damages sustained by

reason of the attachments and garnishments were common to plaintiff and her husband. Counsel for plaintiff recognized this to be true when, during the course of the trial, he applied to the court and was granted permission to amend the complaint by inserting the name of Malcolm McInnis as one of the parties who sustained damage as a result of the joint wrong. Indeed, all of the testimony offered on behalf of the plaintiff relative to the question of damages pertained to a common injury. It was the theory of the plaintiff that it was not necessary, in the absence of any demurrer by the defendants on the ground of defect in parties, that the personal representative of Malcolm McInnis be made a party plaintiff in the action, but that she was entitled to recover the entire damages sustained: *Anderson v. East Oregon Lumber Co.*, 106 Or. 459 (211 P. 937). Notwithstanding the trial court permitted the amendment to be made over the objection of defendants and received the testimony on the theory of a joint wrong, the jury were instructed that the plaintiff could recover only the damage which she sustained, thus excluding from their consideration any damage to the husband. This instruction is conceded by counsel for plaintiff to be erroneous. Since the defect in parties plaintiff appeared upon the face of the complaint it was obligatory upon defendants to demur thereto. Upon failure so to do, the error was waived. This statutory rule (Oregon Code 1930, § 1-609) has often been declared by this court: *Olds v. Von der Hellen*, 127 Or. 276 (263 P. 907, 270 P. 497); *McCormack v. Bertschinger*, 115 Or. 250 (237 P. 363); *Anderson v. East Oregon Lumber Co.*, supra. The record, however, presents the anomalous situation of a cause being submitted under the pleadings and the proof on the theory of a joint wrong but, due to the instructions of the court, the jury being

obliged to base its verdict upon evidence, not in the record, of a wrong to plaintiff individually. The effect of this instruction was to split the cause of action and it is apparent that, if the judgment be permitted to stand, defendants might be subjected to another action by the personal representative of Malcolm McInnis, based upon the same joint wrong.

■■■ Since the judgment must be reversed and the cause remanded for a new trial for the reason that it was submitted to the jury upon a theory inconsistent with the pleadings and the proof, it is deemed advisable to consider some of the other errors assigned relative to the measure of damages. While the authorities in other jurisdictions are in conflict on the question as to whether loss of credit is an element of damage in such actions (see cases listed in note to *Melcher v. Clark*, a Washington case reported in 54 A. L. R. 448), this court in *Korn v. Green*, 129 Or. 186 (276 P. 1112), has answered in the affirmative where the attachment sued out has been malicious and without probable cause. It must be said, however, that the evidence in this case concerning the loss of credit is, in our opinion, insufficient to support a verdict. No keeper was placed in charge of the apartment house as a result of the attachments issued nor does it appear that anyone refused to extend credit to the plaintiff on account of such proceedings. Plaintiff lost no tenant from the apartment house on account of being annoyed or vexed by garnishments. Plaintiff had been in possession of the apartment house approximately only one week prior to the time the writs were issued. The record has been carefully examined concerning this item of damage and we think it is entirely too uncertain and speculative to warrant any recovery based thereon. In the light of *Korn v. Green*, supra, it was proper for the court to submit to

the jury, as an element of damage, the reasonable attorney fees incurred in procuring the release of the property seized under the attachment, but such should not be extended to include attorney fees for defense of the main action. If plaintiffs were wrongfully deprived of the use of their property as a result of the attachments levied, this also would be an element of damage and the instructions given by the court on this phase of the case were correct.

The judgment of the lower court is reversed and the cause remanded for a new trial with directions to permit the parties to file amended pleadings if they see fit so to do.

BEAN, C. J., and BROWN, J., concur. CAMPBELL, J., concurs in the result.

---

Petition for rehearing denied November 3, 1931
ON PETITION FOR REHEARING
(4 P. (2d) 314)

CAMPBELL, J. Respondent has filed a petition requesting a rehearing and earnestly suggests that this court is in serious error in reversing the judgment of the lower court.

Respondent in his brief, states that "this is not an action for malicious attachment but an action for conspiracy for abuse of process." If this were true, then the complaint fails to state a cause of action, as there is not one allegation in the complaint showing any abuse of process. There are, however, sufficient allegations in the complaint to show malicious use of the writ of attachment.

■ "Abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion of a legally

issued process whereby a result not lawfully nor properly attainable under it is secured.

"The action for abuse of process as previously stated, seems frequently to have been confounded with an action for the malicious use of process, or malicious prosecution, although it is an essentially different action. * * * The two kinds of action really necessary to be distinguished are actions for abuse of process and actions for malicious prosecution. The distinctive nature of an action for malicious abuse of process as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued not for malicious causing process to issue." 1 R. C. L. 102.

■■ The text is well supported by the authorities. Plaintiff alleges a state of facts that shows a partnership between herself and Malcolm McInnis. They were engaged in a joint enterprise. They had a joint bank account. They had a custodian for their joint funds. It was their joint funds that were attached. Whatever injury was done by reason of the attachment was to the partnership or joint enterprise. The allegation that plaintiff and Malcolm McInnis were husband and wife is mere surplusage. So is the allegation that they held their real estate by the entireties. There is no estate by entireties in personal property, and it was only personal property belonging to the partnership that was attached. There was no trespass on the realty.

The complaint does not state a cause of action in favor of plaintiff individually. When the court instructed the jury that plaintiff could recover in her individual right, whoever may have suggested the instruction, it, in effect, told the jury that they might return a verdict in favor of plaintiff on a complaint that did not state a cause of action. Plaintiff filed her complaint on the theory that she could recover for an

injury done to a partnership without joining the other partners. Plaintiff, after the dissolution of the partnership, might not bring an action in her own name, and for her own benefit, for damages, arising out of tort, sustained by the partnership during its existence. The other partner, or his legal representative, was an indispensable party to the action.

There was only one cause of action against defendants. The allegations of the complaint do not disclose a cause of action in favor of each individual partner.

It so happens in this case that there were only two partners. But suppose there were a half dozen partners, it surely would not be contended that one partner could bring an action for a joint injury to the partnership, without joining the other partners. There is a total lack of evidence of an individual injury. All the testimony introduced tended to show a joint injury or an injury to the partnership. The jurors had nothing but their imaginations with which to segregate the injury done plaintiff and fix a value thereon.

The petition for a rehearing will be denied.