Argued March 10, affirmed June 4, 1958

# HRYCIUK *v.* ROBINSON
326 P. 2d 424

*Glenn R. Jack,* Oregon City, and *Philip A. Levin,* Portland argued the cause for appellant. With them on the brief was James O. Goodwin, Oregon City.

*Berkeley Lent,* Portland, argued the cause for respondent. With him on the brief were Peterson & Pozzi and Gerald H. Robinson, Portland.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and McALLISTER, Justices.

LUSK, J.

Plaintiff brought this action to recover damages for malicious prosecution and recovered a judgment based on the verdict of a jury in the amount of $7500 general damages and $8300 punitive damages. Defendant appeals.

The complaint alleges that on or about October 29, 1952, in Clackamas County, Oregon, the defendant, H. L. Robinson, falsely, maliciously and without probable cause, informed his son, L. E. Robinson, that the plaintiff had stolen certain personal property belonging to the son, and advised and procured his son to swear to a complaint before the district judge of Clackamas County accusing plaintiff of such crime, as a result of which the district judge issued a warrant for the arrest of the plaintiff, who was arrested and required to post bail in the sum of $1500 to procure his release; that the statements and information given by the defendant to his son concerning the plaintiff

were false and known by the defendant to be false at the time they were made and given. It is next alleged:

"That thereafter and on or about November 12, 1952, the above named defendant did appear before the said judge at the preliminary hearing on said charge and did give false and perjured testimony and in consequence thereof, the said judge held this plaintiff to answer said charge before the Grand Jury of said county."

The complaint further alleged that about December 16, 1952, the grand jury returned a not true bill upon the accusation contained in the complaint referred to, and all further prosecution of the charge has been abandoned by the district attorney of the county. There are appropriate allegations of injury and damage.

The transcript of testimony discloses the following facts: The plaintiff is a landscaper and stone mason, who had done work for the defendant on property owned by him on the south shore of Lake Oswego in Clackamas County. A dispute arose over the amount of money owing to the plaintiff by the defendant for this work, and the former threatened to take action to recover what he claimed to be due. The defendant said to the plaintiff, "If you are going to try to sue me I am going to fix you." In February 1951, before the dispute over the plaintiff's bill arose, plaintiff had gone with defendant to look at a piece of property on the north shore of the lake, which the defendant referred to in his conversation with the plaintiff as his own. The defendant told the plaintiff that he was going to build a house on it for his son, L. E. Robinson. On this property was a large quantity of loose rock, and the defendant told the plaintiff that he could have the rock. Thereafter the plaintiff, with the help of another man, removed three truck loads of the rock and hauled it to property in Portland.

In March 1951 the son discovered that rock had been taken from the property, spoke to his father and mother about it, and, not being able to detect the supposed wrongdoer, finally made complaint to the police officer in Oswego, who advised him to swear out a John Doe warrant. This he did, and the police thereafter made efforts to solve the case, but without success. The defendant participated in the investigation. He testified: "I went over there three, four times a week to see if I could catch anybody taking that rock."

The plaintiff brought his threatened action against the defendant to collect the moneys owing to him, and, on the trial of that case at Oregon City in October 1952, the plaintiff, or one of his employees (it is not clear which), testified that he had taken the rock from the north side property, whereupon the defendant immediately telephoned this information to his son. The defendant knew that the John Doe warrant had been issued, and he mentioned it to his son in this telephone conversation, though he did not, according to his testimony or that of his son, urge the son to obtain a warrant for the plaintiff's arrest. The defendant testified concerning this telephone conversation as follows:

"Q Thank you. Now, Mr. Robinson, it was you, was it not, who informed your son, L. E. Robinson, that Fedor Hryciuk had allegedly taken rock from the place on Berwick Road?

"A Yes. When the evidence come out in the court in the case where he sued me for what he thought he had coming, as soon as the evidence come up, I got right up out of the—my chair and went and phoned my son.

"Q And, what did you tell him?

"A I told him that warrant we had out, the John Doe warrant that he had out for the party taking the rock off his property on—on where he was going

to build had confessed right on the witness stand in this case that I was on in Oregon City.

"Q Did you tell him who that was?
"A Yes, I did.

"Q Who did you tell him it was?
"A I said it was Hryciuk. Fedor Hryciuk."

The son, L. E. Robinson, testified:

"Q He knew that, then, that you had the John Doe warrant outstanding at the time when he told you Hryciuk had taken the rock?
"A Yes, I would assume so.

"Q Well, isn't it true?
"A Yes.

"Q Now, did your father at that time tell you that he had ever taken Hryciuk over to that property?
"A I don't think he has.

"Q Did he ever tell you that he told Hryciuk he could take rock from that property?
"A No, he never did.

"Q Now, at the time that your father—where were you when your father told you about Hryciuk having taken this rock, that it having come out in this trial that Hryciuk was the one who had taken the rock?
"A Mr. Robinson called me in Portland and told me to come out to Oregon City and he then told me then in the court house.

"Q Told you face to face?
"A Yes."

The defendant attended the preliminary hearing, and was called as a witness, not by the state, but by the attorney for the accused. He was not asked whether he had given the plaintiff permission to take rock

from the property, but was asked whether he had ever gone to the property with the plaintiff and denied that he had done so.

Two assignments of error raise closely related questions—one of pleading, the other of substantive law.

The defendant contends that the court erred in overruling a demurrer to the complaint and in failing to give the following instruction requested by the defendant:

> "You are further instructed that where the result of a preliminary hearing before a Judge or Magistrate is unfavorable to the accused as in this case, and he is committed to bail or bound over to the Grand Jury, this is prima facie evidence of probable cause for the criminal action, and unless this prima facie evidence is overcome by proof that the commitment or bind-over was obtained by false testimony or other improper means, it becomes conclusive and must prevent the plaintiff from prevailing in this action.
>
> "In other words, because Fedor Hryciuk, the plaintiff, was by a Judge or Magistrate committed to bail or bound over to the Grand Jury for further investigation, you must find for the defendant, unless you further find that such commitment or bind-over was procured on false testimony or by other unlawful means."

The ground of the demurrer is that, where the complaint in an action for malicious prosecution discloses that the plaintiff was bound over to the grand jury by a committing magistrate, it is essential that the complaint allege that the action of the magistrate was procured by fraud or perjured testimony or other improper means, and that a bare allegation that the defendant gave false and perjured testimony without more is a mere conclusion of law and insufficient as against a demurrer. The facts constituting the perjury, it is said, must be specifically alleged. With respect

to the requested instruction, the defendant contends that, although the court did give an instruction substantially embodying the rule of law set forth in the request, the instruction given was not sufficient because it failed to inform the jury that a binding over or commitment by the magistrate is prima facie evidence of probable cause.

We have held that a binding over or commitment by the magistrate is not conclusive, but only prima facie, evidence of probable cause, which may be overcome by competent evidence on the trial, and that an allegation in the complaint of a want of probable cause is a sufficient averment for the admission of such proof. *Hess v. Oregon Baking Co.*, 31 Or 503-506, 49 P 803. For that reason alone the demurrer was properly overruled.

We are further of the opinion that it was not necessary for the plaintiff to prove that defendant committed perjury at the preliminary hearing in order to prevail, and therefore no error was committed in refusing the requested instruction.

It is true that in two cases we have said that, when it appears that the plaintiff in an action for malicious prosecution was bound over to the grand jury, the duty devolves upon the plaintiff to prove that such action was obtained by false testimony or other improper means. *White v. Pacific Tel. & Tel. Co.*, 162 Or 270, 279, 90 P2d 193; *Putnam v. Stalker*, 50 Or 210, 214, 91 P 363. See, also, *Timmins v. Hale*, 122 Or 24, 37, 256 P 770. This rule has the support of the following decisions: *Giusti v. Del Papa*, 19 RI 338, 33 A 525; *Penton v. Canning*, 57 Wyo 390, 118 P2d 1002, 138 ALR 300; *Graham v. Buffalo General Laundries Corp.*, 261 NY 165, 184 NE 746; *Dawes v. Starrett*, 336 Mo 897, 82

SW2d 43. *Price v. Cobb,* 63 Ga App 694, 11 SE 2d 822, sometimes cited in support of this rule, is questionable.

■ We think that the rule should be re-examined. In doing so we put out of view as not in point cases such as *Trullinger v. Dooly & Co.,* 125 Or 269, 265 P 1117, 266 P 909; *Fones v. Murdock,* 80 Or 340, 157 P 148; *Dunn v. E. E. Gray Co.,* 254 Mass 202, 150 NE 166; *Hoffman v. Hastings,* 116 W Va 151, 178 SE 812, in which it appeared that the plaintiff in the malicious prosecution action had been convicted of the charge. Such a conviction is conclusive and not merely prima facie evidence of probable cause, and the applicable rule is as follows:

> "The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Restatement 3 Torts § 667 (1).

In neither *White v. Pacific Tel. & Tel. Co.* nor *Putnam v. Stalker,* both supra, was it necessary for the court to resort to the rule in question for in both cases the court held, without regard to it, that the evidence disclosed probable cause as a matter of law. As we shall show, two of the three decisions relied on by the court in the *Putnam* case do not support the holding, and one of the two decisions of this court cited in the *White* case is not in point. A formidable array of authority is opposed to the rule, while its implications, if it is logically applied, are such as to make the law an instrument of injustice. An entirely logical argument in the defendant's reply brief illustrates the accuracy of the last statement. It is there said:

> "The policy of the law against actions for malicious prosecution is such that even though a

plaintiff should prove conclusively that a defendant is actuated by malice and acts without probable cause, he is nonetheless unable to prevail if he has been bound over to the grand jury by a committing magistrate after a fair and regular hearing."

This is so, counsel say, even though there is "admission by the defendant of the elements of a cause of action."

In the *Putnam* case the court cited *Sharpe v. Johnston,* 76 Mo 660; *Giusti v. Del Papa,* supra; and *Womack v. Circle,* 70 Va (29 Gratt.) 192, to the statement that, unless the evidence of probable cause arising from a commitment is overthrown by other evidence showing that it was obtained by false pretenses or other improper means, it becomes conclusive and must prevent the plaintiff from prevailing. 50 Or at 214. The *Giusti* case supports this proposition. *Sharpe v. Johnston* holds that indictment by the grand jury or commitment by the examining magistrate is evidence of probable cause which "may be rebutted or overthrown by evidence showing that such indictment, or commitment, was obtained by false or fraudulent testimony, or other improper means, *or by evidence showing that the prosecutor, notwithstanding the action of the grand jury, or the committing magistrate, did not himself believe the defendant to be guilty.*" 76 Mo at 670 (italics added). *Womack v. Circle* holds that the prima facie case can "be repelled *by other evidence,*" 70 Va at 207 (italics added). In the *White* case the court quotes the statement of the rule as contended for by the defendant from 38 CJ 411, and cites the *Putnam* case and *Stamper v. Raymond,* 38 Or 16, 62 P 20. See 162 Or at 279. The *Stamper* case did not involve a commitment, but a discharge by a magistrate, which was held to be prima facie evidence of a want of prob-

able cause, and as to this the court said: "But this is subject to dispute, and may be overcome by competent proof that nevertheless probable cause did exist." 38 Or at 36.

The Restatement says: "The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause." Restatement, Torts § 663 (2). The comment upon this section at p 414 reads:

> "In determining what, if any, weight should be given to the commitment by a magistrate, the court should take into account evidence that the commitment was due to the misconduct of the magistrate or was procured by false testimony offered by the prosecutor or given in his behalf."

This, it will be noted, is quite a different rule from that previously quoted from the Restatement with respect to the effect of the conviction of the accused.

Referring to cases which hold that an unfavorable result of a preliminary hearing makes out a prima facie case of probable cause, it is said in Harper and James, "The Law of Torts" 317, footnote 21:

> "Since there is a prima facie case of the existence of probable cause to start with (plaintiff having the burden of proving its absence), these cases apparently stand for little more than the proposition that such a result of a preliminary examination is a factor to be considered by the judge in determining the question."

Dean Prosser's comment is in similar vein. He says:

> "* * * It is very often said that this [commitment by the magistrate] establishes a 'prima facie' case; but since the plaintiff has the burden of proving lack of probable cause in any case and is free to do so, this apparently means nothing more

than that the commitment is important evidence on the issue." Prosser, "The Law of Torts" (2d ed) § 657.

In *Stainer v. San Luis Valley Land & Mining Co.,* 166 Fed 220 (8th Cir 1908), the court held that, whereas a final judgment of conviction can be attacked only for fraud or kindred reasons, a binding-over order made by a magistrate cannot be given that degree of conclusiveness. The court said:

"Whether an accused person be bound over or discharged by an examining magistrate is evidence only tending to prove or disprove the ultimate issuable fact—the existence or nonexistence of probable cause for the prosecution. It is made by law prima facie evidence of such probable cause, but that is only a presumption which is disputable. In other words, a 'binding over' is a fact which the jury may consider together with all other pertinent facts disclosed in evidence in determining the issue of probable cause, and in the absence of any other countervailing evidence it is sufficient to establish it; but, like other rebuttable presumptions, it yields to the force and effect of the actual facts when proved."

In *Flackler v. Novak,* 94 Ia 634, 63 NW 348, the plaintiff was bound over to the grand jury and indicted. The defendants requested an instruction to the effect that they had probable cause for instituting the proceedings unless the plaintiff had shown that the action of the grand jury and the justice was procured or caused by fraud or false or perjured testimony. The court held that the instruction was properly refused, saying:

"* * * The action of the justice and of the grand jury undoubtedly tended to show probable cause, but would not be conclusive proof of it. If the defendants knew that the real facts did not

authorize the action taken, there was no probable cause for the prosecutions."

In *Bryant v. Murray*, 239 NC 18, 79 NE2d 243, the defendant contended that he was entitled to a nonsuit for the reason, among others, that the plaintiff waived preliminary examination and gave bond for his appearance in the superior court and was indicted. The opinion contains a full statement of the evidence, and there is no reference to any prejury, fraud or other improper means used to influence the grand jury or the magistrate. The court held that the motion for a nonsuit was properly denied, and that, though a prima facie case as to probable cause was made out, "it was still open to the plaintiff to prove there was no probable cause."

*Raleigh & Heidenheimer Bros. v. Cook*, 60 Tex 438, is another case to the same effect. The court there said:

"* * * It is not so much the intermediate action of the courts upon the charge, when there is a final decision of it in favor of the accused, as the motives, grounds, facts and evidence upon which the prosecutor proceeded in making it, that determines the two principal questions of malice and want of probable cause in a suit for malicious prosecution."

In *Kennedy v. Burbidge*, 54 Utah 497, 183 P 325, 5 ALR 1682, a case sometimes cited in support of defendant's contention, there was a judgment of conviction of the accused, plaintiff in the malicious prosecution action, which was reversed on appeal. On demurrer to the complaint the court held that such a judgment was prima facie evidence of probable cause and that, when this fact appears on the face of the complaint, it must also be alleged that the judgment of conviction was procured by fraud, perjury or other

undue or unfair means employed by the defendant. But the court further said that if the evidence was false, but given in good faith and deceived the court, the inference of probable cause would be dispelled. "It is the falsity of the testimony and its tendency to deceive and mislead the court that vitiate the judgment and render it ineffective when offered as evidence of probable cause, whether the testimony was wilful and corrupt or given honestly and in good faith." The complaint alleged that all the material allegations of fact set forth in the affidavit of the defendant, charging the plaintiff with a crime, were false and untrue and malicious, and were made without probable cause, without sufficient knowledge of the facts, or sufficient investigation to obtain knowledge thereof. It was further alleged that the evidence in the district court to which the case was appealed showed that in truth and in fact all of the material allegations in the criminal complaint were wholly false and untrue, and that the city attorney thereupon moved the district court to instruct the jury to return a verdict of not guilty, which was done. These allegations were held to be sufficient. In an opinion denying an application for rehearing the court said:

"* * * We are not disposed to hold that a prosecutor acts without probable cause merely because it turns out that the information upon which he acts was false. But where, in addition to this fact, it is shown that the prosecutor either knew that the information upon which he acted was false, or had no personal knowledge of its truth, and made no investigation to determine its accuracy before instituting the prosecution, a different question is presented. A judgment obtained under either of said conditions should have no standing in a court of justice as evidence of probable cause, much less be treated as conclusive."

In *Peck v. Chouteau*, 91 Mo 138, 3 SW 577, the trial judge instructed the jury that the filing and return of an indictment is prima facie evidence of probable cause "and, unless this proof is overcome by evidence either that said indictment was procured by false or fraudulent testimony, or that, notwithstanding the finding of said indictment, said defendants did not believe the plaintiff to be guilty of the offense for which he had been indicted, the jury will find for the said defendant on the first count." The instruction was on appeal claimed to be erroneous, but the court said:

"* * * This instruction has the sanction of at least two former rulings of this court. Sharpe v. Johnston, 76 Mo. 670; Vansickle v. Brown, 68 Mo. 627. The statement that the finding and return of the indictment is *prima facie* evidence of probable cause is no more than to say the burden of proof to show want of probable cause is upon the plaintiff. The latter part of the instruction is to be taken in connection with another, whereby the jury were properly told that probable cause must have been the belief, by defendants, of the guilt of the plaintiff, based on facts and circumstances sufficiently strong to have induced such belief in the mind of a reasonable and cautious man. The instruction, considered in the light of the one just alluded to, is not objectionable." 91 Mo 149.

We have carefully examined the decisions upon which the defendant relies and which have been cited above. It seems to us that, while conceding that commitment by a magistrate is only prima facie evidence of probable cause, these adjudications really give to a commitment the same effect as though it were a judgment of conviction, for in neither case can the plaintiff recover unless he produces evidence of fraud, perjury, or other improper conduct on the part of the defendant

which brought about the decision. In practical effect, therefore, the one is as conclusive as the other if the view of these authorities is to be accepted.

Again, there may be and no doubt are cases in which the defendant does not testify at the preliminary hearing, nor suborn perjury, nor commit any other improper act after he has maliciously and without probable cause sworn to a criminal complaint and caused the arrest of the plaintiff. The witnesses at the hearing may be entirely truthful and innocent persons. In such a case, unless the rule contended for by the defendant is intended to include the initial wrongful act of the defendant within the term "other improper means" (and then it would have no meaning at all), the plaintiff would be without redress for the wrong done him even though, as counsel for defendant suggest, the evidence showed without contradiction, other than the evidence of the commitment, that the allegations of his complaint were true. But in such a case, in our opinion, it would be the duty of the court, whose function it is to determine what facts do or do not constitute probable cause (*Hess v. Oregon Baking Company*, supra) to charge the jury that want of probable cause had been established and that the commitment should be disregarded.

Nor is a contrary view compelled by any public policy of which we are aware or justified by the doctrine that "actions for malicious prosecution are not favorites of the law." *Kuhnhausen v. Stadelman*, 174 Or 290, 311, 148 P2d 239, 149 P2d 168. In the cited case we referred to that maxim as one reason for noticing palpable error, prejudicial to the defendant, in the court's instructions, even though no exception had been taken. But that rule ought not to be employed as an excuse for placing unreasonable restrictions upon the

right to maintain such an action, for, after all, the law recognizes malicious prosecution as an actionable wrong, and the policy of the law is to vindicate the right of the victim of such a wrong. We said in the Hess case, "Actions to recover damages for malicious prosecution have never been favored in law, although they have been readily upheld when it is shown that the prosecution was instituted through actual malice, and without probable cause." 31 Or at 513. The reason why such actions are not favored is found in the "public policy to encourage the exposure of crime and the punishment of criminals." Id. But this judicial attitude should not be carried beyond its purpose. "Having served that purpose," it was said by Chief Justice Gibson in *Jaffe v. Stone,* 18 Cal2d 146, 114 P2d 335, 135 ALR 775, "it should not be pressed further to the extreme of practical nullification of the tort and consequent defeat of the other important policy which underlies it of protecting the individual from the damage caused by unjustifiable criminal prosecution." See, also, *Price v. Cobb,* 63 Ga App 694, 11 SE2d 822.

From the evidence above set forth it was competent for the jury to find, and it is obvious that they did find, that the defendant, although he had himself authorized the plaintiff to take the rock, and therefore knew that the plaintiff acted without criminal intent and was not guilty of larceny (*State v. Donahue,* 75 Or 409, 415, 144 P 755, 147 P 548), imparted to his son information which was intended to and did lead the latter to institute a criminal proceeding against the plaintiff for the commission of that offense. They could further have found that the defendant's conduct was malicious and actuated by a vindictive motive to even scores with the plaintiff for carrying out his threat to sue the defendant. For present purposes we

must assume the evidence on behalf of the plaintiff to be true, and we think that it would be a shocking result and one not required by the law, if, under such a state of facts, the plaintiff were denied redress simply because it was not shown that the commitment was the result of perjury, fraud or other improper means employed by the defendant.

■ For the decision of this case we need go no further than to hold, in accordance with the authorities to which we have called attention, that, where it is shown by the evidence that the defendant in an action for malicious prosecution knew at the time that he accused another of crime and caused a criminal prosecution to be instituted against him that the accusation was false, the effect, as evidence, of a commitment by a magistrate, is overcome. As we said in *Thienes v. Francis*, 69 Or 165, 169, 138 P 490, if the defendant "has knowledge of facts which would exonerate the accused, he cannot justify his proceeding upon the criminal charge in an action for malicious prosecution." The same rule would apply, of course, to one who procured another to swear to a false complaint.

To the extent that the view of the law we have taken in this opinion disagrees with Oregon decisions heretofore discussed these decisions must be deemed to be overruled.

Failure to prove that perjury by the defendant induced the magistrate to bind over the plaintiff was one of the grounds stated in support of motions interposed by the defendant for a judgment of involuntary nonsuit and a directed verdict. What has already been said is sufficient to dispose of this contention. An additional ground was that there is no evidence that the defendant procured his son to swear to the criminal complaint.

562

■ Counsel for defendant in their brief rely upon the following statement of the rule from *Meyer v. Nedry*, 159 Or 62, 68, 78 P2d 339:

"The test of liability in an action for malicious prosecution is: was defendant actively instrumental in putting the law in force? To sustain the action, it must affirmatively appear as part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion. Mere passive knowledge or acquiescence or consent in the acts of another is not sufficient to make one liable. To impose liability there must be some affirmative action by way of advice, encouragement, etc."

Restatement, 3 Torts 383, § 653, Comment b, also cited by the defendant, is to the same effect. See, also, 34 Am Jur 715, Malicious Prosecution § 22; 54 CJS, Malicious Prosecution 966, § 14.

■ Defendant's argument would make the defendant's denial that he urged or advised his son to swear out a warrant for the plaintiff's arrest conclusive of the question. But whether the defendant was actively instrumental in putting the law in force may be shown by circumstantial evidence. *Meyer v. Nedry*, supra. The defendant's knowledge of plaintiff's innocence; his concealment of the facts from his son and the police and magistrate; his threat to "fix" the plaintiff if the latter should sue him; and the urgency of the matter in his eyes, evident from the fact that he summoned his son to Oregon City, the county seat of Clackamas County in which the alleged crime was committed, and the place where the district attorney has his office; the fact that the son had not theretofore suspected the plaintiff of stealing the rock—all these are circumstances which the jury were entitled to weigh against the defendant's denial of the charge that he

procured the prosecution. The question was for the jury.

The defendant assigns as error the admission over his objection of testimony given by the plaintiff which bore upon the question of damages. The record discloses the following:

"A Well, it makes me feel ashamed. Mrs. Grimm been telling me that she—

"MR. JACK: I object to what other people told her, Your Honor.

"THE COURT: I don't know what—I didn't understand what he said.

"MR. LENT: That's not responsive, anyhow, to my particular questions, Your Honor. I think it would be well taken on that but I do intend to ask about this matter. Well, I think he answered my question and I believe he said it made him ashamed.

"Q Mr. Hryciuk, do you know if any other persons knew of your arrest?

"A Well, at that time there was lots of people standing by Fred Grimm.

"THE COURT: By who?

"THE WITNESS: Fred Grimm Oil Station in Oswego. Mrs. Grimm asked me—another man was standing there—

"MR. JACK: If the Court please, I do object and renew my objection to any hearsay testimony of that character as being improper, irrelevant, and pure hearsay.

"THE COURT: Oh, isn't this the matter that goes to the effect of the apparent information that circulated regarding this?

"MR. JACK: Yes. But, this is not the way to prove it.

"THE COURT: I think he may prove it if he is there. It's a matter that affects him, his attitude, his feeling, his standing.

564

"MR. JACK: Very well.

"THE COURT: Well, the Court will overrule your objection.

"MR. LENT: Q Will you go ahead and tell about that, please?

"A They ask how you come out in jail. We see that you was arrested. You was in jail for stealing rocks. And, I told them, I says, 'Well, I come out from the bond.' And, it was at least two dozen people standing there. 'No, I didn't steal anything,' I told them. And, that's all. And next time I start to pick up the men—

"Q Now, Mr. Hryciuk, who was out there at Fred Grimm's when all this took place?

"A There was all the drivers there and there was lots of people stopping there to buy gasoline and buy stove oil and the wood, and he sells rocks. And, you always find many people. There is a grocery store there—many people.

"Q Did you know the drivers?

"A Yeah. Drivers that drive the trucks and there is many people, they stop by the station—oil and gasoline.

"Q By whom are those drivers employed that you are talking about?

"A By Fred Grimm.

"Q Now, Mr. Hryciuk, what happened with respect to men you sought to hire to work for you?

"A Well, I come down—oh, I was going down to the employment office and talk to—on 3rd and Ankeny to pick up the men and one time I stop there and—with the truck, I wanted to pick up some men, and one man come to me and say, 'How you spell your name?' And, I told him and he picked out clipping, part of paper, 'I see you was arrested for stealing rocks. I don't want to work for you.'

"MR. JACK: If the Court please, I don't want to interrupt. I take it the ruling would be the same to this testimony as to the previous and may I have

an objection to all such testimony on the grounds it's hearsay, incompetent, irrelevant, and immaterial?

"THE COURT: Yes. The record will note your objection. You may have an objection to all of it. This is in the matter of his feeling, injury to his reputation, and so forth, I am taking this.

"MR. LENT: That's what it's offered for.

"THE COURT: Embarrassment and humiliation caused, isn't that what you have in mind—

"MR. LENT: That's what the purpose of it is.

"THE COURT: —its value before the jury? That's what it's being received for. The record will note your objection.

"MR. LENT: Q Mr. Hryciuk, do you know whether or not any of your neighbors knew of your arrest?

"A Well, my neighbors we have at that time, they're just across the street from us, they had eight children. Another house, they have four. And, one time I was outside and I heard another child say, 'But, your daddy been arrested. Your daddy was in jail.' And, my boy, he started going—come to me and start crying. And, my wife, why, she was terribly discouraged for a long time that she didn't know what to say. 'You make yourself like that. You been arrested and I couldn't go to see the neighbors.' She says, 'People don't know. They always look when the sheriff come and pick you up, why, they think I am married to a terrible man. The sheriff pick you up,' she says. My wife says, 'In my house we didn't have any sheriff or police come up to pick up any of our members from the house.'

"Q Now—

"A And, that's the way—

"MR. LENT: Do you wish to object to that any further?

"MR. JACK: I take it my objection goes to all the testimony that—

"THE COURT: Yes. It comes in, as you have indicated, by way of what somebody tells him.

"MR. JACK: That's right.

"THE COURT: Yes. The objection goes to all of that. The record will so show."

■■■■ The question arising from the admission of this evidence has two aspects. First, it must be conceded, and it has not been disputed either in the court below or here, that injury to the plaintiff's reputation and feelings caused by a malicious prosecution is an element of damages. *Lowe v. Brown,* 114 Or 426, 433, 233 P 272, 235 P 395; *Rich v. Rogers,* 250 Mass 587, 146 NE 246, 37 ALR 656, annotation at p 658 (see especially p 661); Newell on Malicious Prosecution 492; 34 Am Jur 791, Malicious Prosecution § 154. The evidence concerning the incidents at the store and service station in Oswego and at the employment office was relevant upon the issue of injury to plaintiff's reputation and feelings, as was the evidence of a statement made by a child in the neighborhood where plaintiff lived. The testimony is not barred by the hearsay rule, for it was not a question of the truth or falsity of the utterances to which the plaintiff testified, but merely whether they were made. They were verbal acts—conduct, as much so as evidence of a change in the conduct and attitude of acquaintances towards the plaintiff, held to be competent in *Rich v. Rogers,* supra, and *Flam v. Lee,* 116 Ia 289, 90 NW 70, 93 Am St Rep 242. The evidence of such utterances being relevant, it was admissible. See VI Wigmore on Evidence (3d ed) § 1766. In this class of cases the courts have held competent factual newspaper accounts of the prosecution of the plaintiff: *Motley v. Dugan,* (Mo App) 191 SW2d 979; *Diggs v. Arnold Bros., Inc.,* 132 Cal App 518, 23 P2d 71; the fact that it was generally known

that plaintiff had been indicted and charged with the crime of larceny: *Miller v. Greenwood,* 218 NC 146, 10 SE2d 708; testimony in regard to the humiliation to which the plaintiff was subjected by reference being made to the fact of his imprisonment and prosecution by his neighbors: *Redman v. Hudson,* 124 Ark 26, 186 SW 312; and the fact that a report (brought home to the plaintiff) was circulated in the neighborhood where plaintiff lived that plaintiff was a jailbird and had stolen a car: *Miller v. Lee,* 66 Cal App2d 778, 153 P2d 190.

In its other aspect counsel for the defendant have argued that evidence of distress suffered by members of the plaintiff's family is inadmissible. On this question, which has arisen most frequently in defamation cases, the decisions are not uniform. It is held by some of the courts that, while the plaintiff may properly show that he has a family and the damages may be enhanced by the suffering which it may be inferred was caused the members of his family by a libelous publication, evidence that they actually did suffer must be rejected: *Thorson v. Albert Lea Pub. Co.,* 190 Minn 200, 251 NW 177, 90 ALR 1169; *Stevens v. Snow,* 191 Cal 58, 214 P 968; *Bishop v. New York Times Co.,* 233 NY 446, 135 NE 845 (a four to three decision, dissent by Cardozo, J.) ; *Dennison v. Daily News Pub. Co.,* 82 Neb 675, 118 NW 568; *Sheftall v. Central of Georgia Railway Co.,* 123 Ga 589, 51 SE 646. Cf. *Earl v. Times-Mirror Co.,* 185 Cal 170, 196 P 57. As representing the opposing view there may be cited the following cases of malicious prosecution: *Flam v. Lee,* supra; *Ott v. Murphy,* 160 Ia 730, 141 NW 463; *Thomas v. Frost,* 83 Utah 207, 27 P2d 459; and *Luna v. Seattle Times Co.,* 186 Wash 618, 59 P2d 753, 105 ALR 932 (a libel action).

For reasons now to be stated we find it unnecessary to decide the question.

Counsel's objection, first made when the plaintiff started to relate what occurred at the Fred Grimm Oil Station, was "to any hearsay testimony of that character as being improper, irrelevant, and pure hearsay." He conceded, in answer to a question by the court, that it was "matter that goes to the effect of the apparent information that circulated regarding this," and added "But, this is not the way to prove it." A continuing objection, which later in the testimony he sought and was allowed, was based on the grounds that "it's hearsay, incompetent, irrelevant, and immaterial." After the last answer of the witness above quoted was given, counsel for the defendant was asked by the court whether he wished to object further, and he answered, "I take it my objection goes to all the testimony that—" when the court interrupted with this statement, "Yes. It comes in, as you have indicated, by way of what somebody tells him." Counsel then said, "That's right," and the court concluded the matter by the statement, "Yes. The objection goes to all of that. The record will so show."

■ The general objection, "incompetent, irrelevant, and immaterial" is sustained only when the question is obviously improper. *Goldfoot v. Lofgren,* 135 Or 533, 539, 296 P 843, and Oregon cases there cited. Again, we said in *Hamilton v. Kelsey,* 126 Or 26, 41, 268 P 750:

> "* * * But to merely object generally is not sufficient; the inadmissibility of the proposed proof may be apparent without more than counsel's protest, but many times the infirmity of the offered evidence or its infraction of some rule of evidence is not patent. It is under these circumstances that the objection should be as specific as the situation demands."

■ Here there was a general objection limited, however, by counsel's own statement that the evidence called for was hearsay. He conceded the materiality and relevancy of the subject matter of the evidence if it was properly proved. But "by a process of accretion, this simple objection" (*Porter Const. Co. v. Berry*, 136 Or 80, 96, 298 P 179) has expanded to a contention that evidence of the effect of the malicious prosecution upon members of the plaintiff's family cannot be proved at all. No such suggestion was made in the circuit court. As we said in the case just cited, "This is a court of review, we reiterate, and, unless an objection to a piece of proffered evidence was voiced in the circuit court, we must decline to consider it here."

■ The question which evoked the answer now under consideration was a proper one, and was relevant upon the claim of injury to plaintiff's reputation and feelings. The portion of the answer of which complaint is made was not responsive to the question, but there was no motion to strike it out. Where a question asked a witness is unobjectionable, but the answer goes beyond what is called for and improper testimony is produced, an objection to the question will not extend to the answer. *Elliff v. Oregon R. & N. Co.*, 53 Or 66, 82, 99 P 76. See, also, *Wallace v. American Toll Bridge Co.*, 124 Or 179, 185-186, 264 P 351; *Moulton v. St. Johns Lumber Co.*, 61 Or 62, 67, 120 P 1057. True, counsel was allowed a continuing objection. But, as we held in the recent case of *Noteboom v. Sabin*, 213 Or 583, 322 P2d 916, such an objection is of no avail where the ruling on the objection originally made was correct. As we have seen, the original ruling in this case was correct. In the Noteboom case we cited with approval the holding in *Truitt v. Truitt*, 290 Ky 632, 162 SW2d 31, 140 ALR 1127, that making an objection to evidence,

which is admissible because within an exception to a rule of exclusion, does not obviate repeating the objection to similar evidence which is not within the exception to the rule. That is exactly the posture of the present case.

■ The testimony of the plaintiff that his child cried when another child said that his daddy was arrested and was in jail, and that his wife made certain statements to him regarding the effect of his arrest upon her, was not vulnerable to the objection that it was hearsay. The objection to the evidence was not to the facts, but to the method of proving them. The question now sought to be reviewed was not presented to, or passed upon by the circuit court, and is not before us.

Evidence was received that plaintiff paid $150 as the cost of a bail bond and $150 to his attorneys for their services in representing him on the charge of larceny. The court instructed:

"In awarding damages, if any, you will take into consideration his humiliation and embarrassment, injuries to his reputation, if any, his mental anguish and worry, if any, *reasonable expenditures necessarily incurred in the matter of cost to secure bail and for services of an attorney,* and if you find that plaintiff is entitled to damages you will award to the plaintiff as general damages whatever sum you find from a preponderance of the evidence to be adequate, reasonable, and proper, not exceeding the amount demanded in the plaintiff's Complaint." (Italics added.)

Defendant excepted to this instruction on the ground that there was no evidence "of any special damages such as the expenses incurred having been reasonable." There were other grounds stated in the

exception, but, as they are not insisted upon here, they need not be noticed.

The expenditures referred to in the instruction are not alleged in the complaint, and evidence concerning them was admitted over the objection of the defendant, but the ruling on the objection is not assigned as error. There was no evidence that the charges were reasonable. The plaintiff's theory is that attorneys' fees and the cost of a bail bond are general damages and therefore need not be pleaded, and that the instruction did not authorize the jury to allow the items as such but merely "to take the fact that necessary expenditures had been made into consideration."

But these are elements of special damage: *McInnis v. Atlantic Inv. Co.,* 137 Or 648, 651, 3 P2d 118, 4 P2d 314; Restatement, 3 Torts § 671; Newell on Malicious Prosecution 410-415, and must be specially alleged and proved: 38 CJ 470, Malicious Prosecution § 132. Attorneys' fees and other necessary expenses incurred by the plaintiff in defending against a malicious criminal charge may be recovered provided they are shown to be reasonable and necessary: *McInnis v. Atlantic Inv. Co.,* supra, 137 Or at 654; 54 CJS 1076, Malicious Prosecution § 92; 38 CJ 448, Malicious Prosecution § 100. We need not extend this opinion by reviewing numerous decisions cited by the plaintiff as support for the instruction. It will suffice to refer to only one: *Blazek v. McCartin,* 106 Minn 461, 119 NW 215. In that case the trial court gave an instruction on attorneys' fees similar to the one under examination, but (differently from the present case) expressly stated that plaintiff was not entitled to reimbursement for what he had paid the attorney, and that there was no evidence in the case of the value of the services so rendered. On appeal it was held that the defendant was in no way

prejudiced by the instruction and there was no reversible error. Referring to the earlier case of *Mitchell v. Davies,* 51 Minn 168, 53 NW 363, in which the plaintiff testified that he was charged $25 by his attorney for defending a malicious prosecution suit but there was no evidence of the reasonableness of the charge, and the appellate court reversed for permitting the jury to include the amount so charged in the damages, the court said: "The Mitchell case proceeded along technical lines, and should not be extended." It is clear that the case of *Blazek v. McCartin* does not support the plaintiff's contention. We think that the instruction here would have been understood by the jury as authorizing them to allow the items in question as damages. Whether they did so we cannot know, as the verdict was general. Nevertheless, in view of what this court judicially knows about the value of an attorney's services in defending a client charged with felony, and, since the evidence shows that both the attorneys' fee and the cost of a bail bond were actually and necessarily paid by the plaintiff, we are of the opinion that, in view of all the circumstances of this case, the error was technical rather than substantial and not ground for reversal.

In the plaintiff's case the defendant, called by the plaintiff as an adverse witness, testified that he had given certain testimony at the preliminary hearing. Thereafter the defendant offered in evidence the entire transcript of testimony for the purpose of showing, as stated by counsel for the defendant, "that the court had probable cause for the binding over." The court sustained an objection to the evidence, and the ruling is assigned as error. We think that it was correct. Since the finding of the magistrate was prima facie evidence of probable cause, we are unable to see how

the transcript of testimony could serve the purpose for which it was offered. It is argued, however, that, inasmuch as the court instructed the jury in effect that the plaintiff could only recover if they found that the prosecution was malicious and without probable cause and that the magistrate's order binding over the plaintiff to the grand jury was made "in consequence of" false and perjured testimony of the defendant, the jury should have the entire testimony in order to enable them to determine whether the magistrate's finding was based on such perjury or on other evidence. Our holding that it was not necessary for the plaintiff to prove that the defendant perjured himself at the hearing is sufficient to dispose of this contention. Moreover, even where the contrary rule prevails, it is held that it need not be shown that the magistrate's determination was based solely on perjured testimony: *Price v. Cobb,* supra. Nor is it apparent how it would be possible for a jury to discover from an examination of the transcript what testimony did and what did not influence the magistrate's decision.

The record discloses no reversible error, and the judgment is, therefore, affirmed.